[Crim. No. 1093. Third Appellate District.—October 15, 1929.]

THE PEOPLE, Respondent, v. E. GARCIA, Appellant.

A. H. Carpenter for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted of manslaughter for the negligent driving of an automobile which resulted in a collision and the death of John Browning.

At dusk on the evening of May 31, 1929, the defendant, who is a Filipino, was driving a large Chrysler sedan car containing four other countrymen at a high rate of speed along the Thornton Road in San Joaquin County. At the same time the deceased with two other companions was driving a Pontiac coach from Stockton to Lodi along the Turner highway. Upon reaching the intersection of these highways the speed of the Pontiac machine was diminished to a rate of about fifteen miles an hour. When it reached a point past the center of these roads, it was struck midway along its side by the Chrysler machine, running, as two witnesses who observed the collision testified, at fifty miles an hour. The Pontiac car was hit with such force that, as Mr. Alderson testified, "The Pontiac flew up in the air and turned over about three times." It was hurled from the highway and landed in the ditch twenty-five or thirty steps from the point of collision. The course of the Chrysler was diverted by the impact and it landed at a considerable distance from the point of collision out in a vineyard by the roadside, cutting off vines and breaking down a pole which was six inches in diameter. Both cars were demolished. As a result of the accident John Brown-

ing was instantly killed, one of the occupants of the Chrysler car subsequently died, and all of the other occupants of both cars, who were more or less injured, were immediately taken to the Buchanan Hospital. Dr. Buchanan, who rendered medical aid to the injured persons, testified that the defendant was cut on the arm and that he had a scalp or face injury, which he sewed up, and that he was bleeding profusely, but added that his condition was not bad, and that his mental capacity was not affected by the injury; that he could answer questions. "Q. Did you hear him answer the questions? A. I did, yes." That same evening about 10 P. M. the defendant and his companions were interviewed at the hospital by Carroll, a deputy coroner, and J. E. Hopkins, police judge of Lodi, and subsequently by one Whitman, all of whom testified to conversations with the defendant, who spoke poor English, but seemed to understand and responded intelligently to the interrogations. To each of these witnesses the defendant admitted that he was driving the Chrysler car at the time of the accident.

The testimony regarding the defendant's admissions to the effect that he was driving the Chrysler car at the time of the accident, was received over defendant's objections upon the ground that these statements were incompetent and inadmissible for the purpose of establishing the *corpus delicti*. There is no evidence other than defendant's admission which tends to establish the identity of the driver of the Chrysler car.

There is no merit in the contention that the record fails to show that the defendant was able to understand and speak English. There is a conflict of evidence regarding this subject, which must be resolved in favor of the judgment. This was a question for the jury to determine and this court is bound by its implied finding that he could understand and speak English clearly enough to bind him by his admissions.

The appellant assumes that the mere admission of the defendant that he drove the car at the time of the accident, was a necessary element of the *corpus delicti* and that it was, therefore, inadmissible under the rule announced in the cases of *People* v. *Quarez*, 196 Cal. 404 [238 Pac. 363]; *People* v. *Bedoy*, 80 Cal. App. 783 [252 Pac.

1061]; *People* v. *Frey,* 165 Cal. 140 [131 Pac. 127]; *People* v. *La Rue,* 62 Cal. App. 276 [216 Pac. 627]; *People* v. *Jones,* 31 Cal. 566, and other similar cases. In most of these cases, however, the challenged admissions or confessions were essential to establish the *corpus delicti,* without which that important element of the crime would have no support in the record. In the Jones case, *supra,* a conviction of the defendant was reversed for lack of competent evidence of the *corpus delicti.* The court said: "Without some evidence tending in some degree to show that Ah Po *was robbed,* the question as to who robbed him cannot well arise. . . . Extrajudicial confessions of a prisoner, without other proof of the fact *that a felony has been committed,* are insufficient to justify a conviction." In the Bedoy case, *supra,* a statement was made which is equally applicable to the Quarez case, above cited, as the nature of the offenses was the same. The court said: "The foreign nativity of the defendant (charged with the possession of a firearm by a foreign-born unnaturalized citizen) being an essential element of the *corpus delicti,* should be established by evidence independent of his extrajudicial statement." In the present case, however, the killing of John Browning as the result of a collision with the Chrysler car while it was being driven at a high rate of speed in a reckless manner, without due caution or circumspection was established independent of any admissions of the defendant, and furnished ample proof of the *corpus delicti* as that crime is defined in section 192 of the Penal Code. The identity of the individual who committed the crime under such circumstances is no part of the *corpus delicti.* In the case of *People* v. *Domenighini,* 81 Cal. App. 484 [254 Pac. 292], it is said the essential elements of the *corpus delicti* are: "(1) Certain facts forming its basis, and, (2) The existence of criminal agency as the cause of them." In the La Rue case, above cited, in which the defendant was convicted of syndicalism, it was contended that evidence of extrajudicial admissions of membership in the objectionable organization constituted reversible error on the theory that such acknowledgments of membership were a necessary part of the *corpus delicti.* The court said: "It seems clear that the criminal organization constitutes the *corpus delicti.* Proof of membership therein serves only to connect the defendant

with the crime. Proof of the killing of a human being by a criminal agency establishes the *corpus delicti* in homicide without any evidence tending to show who committed the act. After such proof has been made, the fact that the defendant struck the fatal blow may be shown by his extra-judicial admissions alone. . . . Such admissions (of membership in the organization) . . . did not tend in any degree to show the criminal character of the organization." Likewise, in the present case, the admission on the part of the defendant that he drove the Chrysler machine at the time of the accident, was not an admission that he was driving it in an unlawful or reckless manner without due caution or circumspection. This admission was, therefore, no part of the *corpus delicti*, and the objection to this evidence was properly overruled.

In the case of *United States* v. *Jones,* 10 Fed. 469, 470, an objection to the evidence of an admission by the defendant that he was the sender of a letter through the mail in violation of law, on the ground that the identity of the sender was a part of the *corpus delicti,* was similarly disposed of as follows: "We are therefore of the opinion that the offense charged was proved by the evidence. Another point taken is that there was no evidence of the *corpus delicti* except the defendant's admission. But the gist of the offense consists in the abuse of the mail. The *corpus delicti* was the mailing of the letter in the execution of the unlawful scheme. There was direct evidence of the mailing of the letter by someone, and the letter itself showed the unlawful character. This much being shown, it was certainly competent to prove that the defendant was the sender of the letter by his admission to that effect."

So in the present case there was ample direct evidence of the unlawful speed and the reckless manner in which someone operated the Chrysler machine resulting in the death of a human being. It was certainly competent to prove by his own admission that the accused was the individual who drove the machine.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 30, 1929.