[Crim. No. 4423.   Second Dist., Div. Three.   May 26, 1950.]

THE PEOPLE, Respondent, v. HARRY ALKOW, Appellant.

Harry Alkow, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Donald D. Stoker, Deputy Attorney General, for Respondent.

SHINN, P. J.—Harry Alkow was convicted in a jury trial of the theft of $200 from Ted Watry. He was sentenced to state prison, execution of the sentence was suspended, he was placed on probation for seven years, one of the conditions being that he serve a year in the county jail. He appeals from the judgment and from an order denying his motion for a new trial. The only ground of appeal that requires decision is that the evidence was legally insufficient to prove the commission of the offense.

Nick Harris Finance Exchange was a corporation, licensed by the state as a collection agency. It had been owned and operated by Nick Harris prior to his death in 1943. His widow succeeded to the business and caused the corporation to be formed. There was testimony that a Mrs. Lux owned 50 per cent of the capital stock and that Mrs. Harris also was a stockholder. One Thomas Morgan was connected with the company and had acted for the company in obtaining the state license. He was its managing director, but it does not appear that he had any special duties for the company, although he appeared at the company office several times each week and was paid by defendant $25 or $35 per month for the use of his name. Upon a signature card with the Security-First National Bank of Los Angeles executed September 11, 1949, Morgan was listed as president, and Anne F. Scherrei, as secretary. Either of these two, with defendant, could draw checks upon the company's bank account. One account was carried with the Security and another with the California Bank, also in Los Angeles. It appears also that defendant had an account with the Citizens National Trust & Savings Bank, as trustee for the company. Defendant had been attorney for Nick Harris for many years and continued to act as attorney for the corporation after it was formed. His name was listed on the Security Bank signature card as attorney.

On or about May 23, 1948, Ted Watry delivered to defendant the promissory note of Lois and James Daly upon which there remained unpaid to Watry $2,026. Defendant received the note at the office of the company which was also his law

office, representing himself to Watry to be "Mr. Brown." He accepted the note for the corporation for collection at a fee of one-third of the amount collected. James Daly was contacted in Alpine, California, came to Los Angeles and met defendant at the company office. ■ A week or ten days later, on June 23d, Daly made a settlement of the note with defendant for $1,675, giving him a cashier's check for that amount. Defendant made out a deposit ticket and caused the check to be deposited to the account of the corporation in the Security Bank. Defendant promised Watry that he would be notified when a collection was made. He heard nothing from defendant until the middle of August, when he called defendant by telephone and was told to come in the first of the month when defendant would have a check for him. Watry called at the office of the company September 1st and was told by defendant that $400 had been collected, that the man who made out the checks was on vacation, but that a check would be mailed to him on September 5th. No check came. About September 20th Watry called defendant who told him a mistake had been made in dating the check and that a check for $400 would be mailed to him October 1st. No check arrived, and in October Watry again saw defendant at the company office and defendant promised to send a check to him "right away." About November 1st defendant gave Watry a check for $400 which was dishonored by the bank because it required two signatures and had only one. On December 15th Watry received from defendant a cashier's check for $350 and his check as trustee for the company in the amount of $116.66. This latter check was returned for insufficiency of funds. Watry testified that defendant had told him that payments on the note were coming in at the rate of $150 per month but only $600 had been collected and that he would receive $100 per month. Prior to the trial, Watry was paid two-thirds of $1,675, with funds received from the sale of assets of the company. A representative of the Security Bank testified that on June 22, 1948, the bank balance of the Nick Harris Agency was $7.60. At the close of business the day the Watry check had been deposited the balance was $1,468.10 and on July 1st, $32.72. In the meantime some 32 checks had been drawn on the account, and some small deposits had been made. Although Mr. Morgan and Miss Scherrei had authority to draw checks on the account there was no evidence as to the signatures appearing upon the checks which had dissipated the account.

Mr. Morgan was called as a witness and testified that he sometimes signed numbers of checks in blank at the request of defendant. He was not questioned as to whether he had drawn or issued any of the 32 checks. Miss Scherrei was not called as a witness and her absence was not accounted for by the People. On cross-examination defendant was questioned as to his knowledge of a check for $225 charged to the account on June 24th, and one for $250 on June 25th, which were shown on the bank records, and denied that he had any knowledge of either of them. He testified that he had not used any of the money himself, but he was not questioned concerning his knowledge of the issuance of these checks nor as to the purposes for which the money may have been used. It appeared without contradiction that the office of the company was placed under attachment in September and that everything in the office was taken into possession of the marshal. The bank accounts also were attached but there was no evidence as to the bank balances at that time. Neither defendant nor any other witness was questioned concerning the cancelled checks and so far as appears no effort was made by the People to have them produced at the trial. There was no evidence that defendant wrote or issued any of them, or received or used any of the money. Defendant testified he was not an officer or director of the company and that he owned no stock. There was no contradictory testimony. The evidence was that Mrs. Lux and Mrs. Harris were the owners of the stock and that Mrs. Lux was at the office every day and active in the business although she was out of the city during the month of June. No attempt was made by the People to ascertain the amount of money at any time in the company account in the California Bank, nor was defendant questioned as to whether the company had funds in the account in the Citizens Bank upon which he had drawn a check as trustee. In other words, there was no direct evidence of inability of the corporation to pay the amount that was due Watry if those in charge had seen fit to do so. The People introduced testimony of statements made by defendant during an interview in the district attorney's office to the effect that defendant stated that he had been in charge of the affairs of the collection agency and that the money had been used to meet obligations of the company. There was also testimony from these witnesses that defendant denied having made use of the money himself.

Defendant in his testimony admitted that he had given the fictitious name of ''G. Brown'' to Watry. His explanation was

that he had used that name in the past in dealing with customers of the business and had done so at the suggestion of Harris. He did not deny that he had concealed from Watry that a settlement had been made with Daly nor did he deny any of the other testimony of Watry. The least that can be said of defendant's conduct is that it unquestionably reflects extreme discredit upon him as a member of the bar. The most that can be said as to the legal sufficiency of the evidence to prove the offense is that it creates a strong suspicion of his guilt. The collection agency was the agent of Watry and held money for his use as such. If the money was fraudulently appropriated by means of defendant's actions or pursuant to his directions, he was guilty of embezzlement. The case was tried upon the theory that the company was being operated by defendant for his own benefit, that the collection agency was a corporation in name only and was the alter ego of defendant. The evidence did not sustain this theory, nor was it necessary that it should in order to establish defendant's guilt. However, it was necessary to fasten responsibility upon defendant by direct evidence or by circumstantial evidence so complete as to overcome reasonable theories of innocence. The evidence left much in doubt. Even if it could be said that on the surface it appeared that defendant was probably guilty, this was not sufficient. The facts that would have turned the scales in favor of guilt or innocence lay below the surface and the People made slight effort to unearth them. It was for the People to bring them to the surface if it was believed they would establish guilt, not for the defendant to produce them in order to establish his innocence. As we say, there was no testimony that defendant issued any of the checks or that he had knowledge that they were being issued by others. There was no testimony that the checks did not bear the signatures of Mr. Morgan and Miss Scherrei or that they were not issued by some person or persons other than defendant. The possible inference that others did not issue them was an inadequate substitute for proof of that fact by the testimony of the witness Morgan and by that of Miss Scherrei who, so far as disclosed by the record, was available as a witness. No effort was made to prove the status of the company account in the California Bank, or the resources of the company. Evidence as to these facts would have had a direct bearing upon the motives of the person or persons who made use of the funds

on deposit in the Security Bank. The mere fact that those funds were used for the benefit of the company did not of itself constitute the offense in the absence of evidence direct or circumstantial that they were used fraudulently. It is true that defendant lied to Watry and made numerous promises that were not fulfilled. This deceit could have been deemed sufficient to prove a fraudulent intent upon defendant's part if the People had produced evidence to fill in the gaps we have mentioned, but evidence of conduct upon the part of defendant indicating that an appropriation of the funds by him would have been fraudulent was not evidence that the funds were appropriated by defendant, or by other persons with his connivance. ■■ Evidence which merely creates a strong suspicion of the guilt of the accused does not shift the burden of proof and impose upon him the duty of overcoming the ·suspicion. As we say, a strong circumstance tending to prove defendant's guilt would have been proof of the fact that the checks were not issued by others in the company who had authority to issue them. When the People failed to question Morgan, president of the company, and failed to call the secretary, Miss Scherrei, or to account for her absence, to assume that their testimony would have been favorable to the People would be wholly unjustified. The presumption is to the contrary. ■■ We have concluded that a reversal is required upon the ground of insufficiency of the evidence. Too much was left to speculation and conjecture on the part of the jury when satisfactory proof was available. As a consequence we are not only faced with a difficult problem concerning a particular case but also a grave question as to our duty as a reviewing court in the establishment of a precedent. The review of a judgment in a criminal case is a heavy responsibility at best, and we are unwilling to overlook trial practices which create serious problems on appeal which could easily have been avoided.

It is the right of every reviewing court to insist that in the trial of a criminal case the evidence of the People should be the best that is obtainable. The limitation of jurisdiction on appeal to questions of law implies that the facts which are determinative of the question of guilt will be as firmly established as possible in the trial court and that reliance will not be placed upon the ability of jurors to choose between conflicting inferences when evidence is available to prove material facts. Therefore, as far as possible, uncertainty should be removed from the case. When presentation of the evidence

is unnecessarily incomplete, and the crucial facts of the case are left to inference, the tendency will be to relax the requirement that guilt must be established beyond a reasonable doubt and place emphasis upon mere suspicion. We have such a record in the present case. The deficiencies of the evidence of the People would have required the jurors to determine upon the basis of probabilities whether a disclosure of further facts would have tended to prove guilt or innocence. We do not believe the evidence was legally sufficient to establish guilt or to warrant the jury in determining beyond a reasonable doubt, by inference from the evidence, that the essential facts which the People did not undertake to put in evidence would have cured the insufficiency.

The judgment and order denying motion for new trial are reversed and the cause is remanded for a new trial.

Wood, J., and Vallée, J., concurred.