[Civ. No. 18818. Second Dist., Div. Three. May 8, 1952.]

HELEN JULSON, Appellant, v. JAMES JULSON,
Respondent.

William Mayhew and Gerald R. Edgington for Appellant.

William Kinley for Respondent.

SHINN, P. J.—Helen Julson brought this action for separate maintenance, charging extreme mental and physical cruelty.

Defendant filed a cross-complaint for divorce, with similar allegations. Findings were against plaintiff upon the complaint and the cross-complaint. She appeals from a decree awarding defendant a divorce and dividing the community property.

The grounds of appeal are that the finding of extreme cruelty is not supported by the evidence and that the court failed to find whether defendant had deserted plaintiff.

When the court directed judgment for defendant on his cross-complaint the terms of the decision were entered as a minute order, which read, in part: ''Cross-complainant is ordered to pay to the cross-defendant for her support and maintenance, the sum of $100.00 per month until the further order of the Court. Counsel for cross-complainant is to prepare judgment and findings.'' The minute order in other respects stated the terms of the judgment that was thereafter signed. The conclusions and judgment, prepared by defendant's attorney, provided for the payment to plaintiff of the sum of $100 per month until the further order of the court. These provisions were crossed out and the findings, conclusions and judgment were signed. The conclusion is inescapable that the provision for plaintiff's support was an integral part and condition of a judicial decision of the issues in the case in favor of the defendant. But although the minute order was a judicial act, it was superseded by the findings and conclusions, which, alone, constitute the final decision of the issues upon which the judgment rests. The attempted award of support to the wife, when the husband was granted a divorce, although unauthorized, and of no legal effect, since it was superseded by the judgment, was nevertheless a factor which influenced the judgment of the court in the dissolution of the marriage. Plaintiff made a motion for a new trial, which was denied.

The claim of insufficiency of the evidence to justify the finding of cruelty is addressed solely to the absence of any substantial corroboration of defendant's testimony.

The parties have been married for 25 years. Plaintiff is 51 years old; she earns, net, $117 per month as a department store clerk; she has had several operations. Defendant is employed by a telephone company and earns net $430 per month. The community property, according to somewhat vague estimates of the parties, is worth about $15,000. Only minor items of personal property were awarded to the respective parties, the remainder being left in community ownership.

₀ Defendant left the family home in March, 1948; plaintiff brought suit three months later; the action was tried in March, 1951. The case went to trial with little or no preparation on either side. Defendant was not represented by his present counsel. Plaintiff had no witness other than herself. Defendant testified to two incidents when plaintiff lost her temper, produced one witness whose testimony we shall discuss, and failed to produce any one of a dozen or more friends of the parties who, he testified, witnessed the occurrences.

Defendant's chief complaint was that plaintiff continually nagged him. His testimony on this subject was of a vague, general nature and in his cross-examination he was not asked to expand upon it. It was sufficient however, if believed, to prove that plaintiff was given to criticism, but it was in no respect corroborated. None of defendant's three witnesses, one of whom was his sister, Mrs. Van Hook, mentioned any instance of nagging or harsh or unkind words spoken to defendant. She had visited in the home and testified, enigmatically, that she had observed in plaintiff's conduct ''nothing out of the ordinary.'' Complaint was made that plaintiff was neglectful in preparing defendant's meals, in making his bed and in placing garbage in the garbage pail. This neglect, defendant testified, commenced after plaintiff had had her operations, one of them for hernia. There was no corroboration of any of these charges, although Mrs. Van Hook described plaintiff's housekeeping as ''not very neat, I would say.'' Defendant testified that he became nervous, ill and unhappy, and that plaintiff's complaining ways compelled him to spend his evenings away from home, playing cards, and his weekends hunting. A careful reading of the transcript furnishes no satisfactory answer to the question whether defendant's regular absences from home were due to plaintiff's critical attitude, or the cause of it. Spending his evenings playing cards and his weekends hunting was not distasteful to defendant. Upon the contrary, he seems to have enjoyed it. If he was driven to it, he drove easily. Defendant testified that he lost 35 pounds while living at home, implying that plaintiff was in some manner responsible, but he also testified that the weight was lost while he was on a six months' soft diet. He regained the weight. He testified that his card sessions lasted until 1 a. m. and that the late hours undoubtedly affected his health. Defendant's sister and one of his hunting companions tes-

tified that defendant appeared healthier and happier after he left home. Although this improved condition may have been due to defendant's new way of life, the fact that there appear to be, or are, greener pastures elsewhere is not regarded, in law, as a sufficient reason for breaking up a home.

We now come to the only specific instances of plaintiff's loss of temper to which defendant testified. One evening, Cecil McKitrick, his wife, his mother and brother, came in to play cards. They had drinks. According to Cecil, during the game plaintiff's temper flared up, she said she wasn't going to play and would appreciate it if the guests left, which they did. Cecil could not remember what was said to start the incident. Defendant testified that plaintiff thought Cecil held too many jokers, became "irate at" him and said: "If that is the way you are going to play, I don't want to play with you." Plaintiff's explanation was that they had all been drinking, that Cecil was intoxicated and became obnoxious, that there wasn't anything she could do or say that she wasn't "needled" about, and that she took it as long as she could. No one disputed plaintiff's testimony that Cecil was "needling" her and making himself obnoxious, although Cecil denied he was intoxicated. We have related the evidence as to the circumstances in which plaintiff became annoyed over Cecil's card table and drinking behavior, and offended the guests, in order to show the utter triviality of the occurrence. After 25 years of marriage this was the one isolated instance of alleged cruelty sought to be proved by the testimony of a third person. Defendant testified there were numerous other occasions when plaintiff was rude to guests but he did not describe any of them.

It is true, of course, that the corroboration which the law requires in a divorce case charging cruelty is sufficient if it goes to some of the accusations which, if established, would justify a finding of cruelty, or otherwise lends substantial support to the testimony of the complaining party. But the rule is not so elastic, nor the law so unrealistic, as to recognize as extreme cruelty a verbal exchange over a card game due to nervous tension induced by alcoholic indulgence and by conduct which, whether reasonably or not, causes one of the participants to find another annoying and obnoxious. Considering alone the only incident as to which corroboration was offered, would it not be making the court a mere instrument of convenience in the dissolution of marriages to hold that it is both lawful and just for a husband

to discard a wife of many years rather than give up his card games and drinking?

One other incident was related by defendant. At a dance at a country club he left with plaintiff's sister and joined others outside to get a drink from a bottle in a car. When they arrived the bottle was empty. As they were returning to the building plaintiff appeared, struck defendant on the chest and exclaimed he had no right to leave the hall without letting her know about it. Defendant did not testify that plaintiff was angry or loud-spoken, but that her tone of voice was "sarcastic and derogatory." There was no evidence that anyone was annoyed or embarrassed by the incident. Everyone then went inside and had a drink, and there appears to have been no more unhappiness upon that occasion. Opinions may differ as to the etiquette of the situation—whether it was not as serious a breach for the husband to ignore his wife as it was for her to express her hurt feelings. Defendant testified that there were about 10 persons in the group who witnessed the empty bottle episode. None of them was called as a witness and no explanation was given of the failure to call them. Although defendant testified that plaintiff had on numerous other occasions offended their guests, he described none of these instances and called no witness to describe them. The trial court should have assumed, in view of the necessity for corroborating evidence, that defendant would have called at least some of these persons if their testimony would have been favorable to him, and should have presumed that if they had been called they would not have corroborated defendant's testimony as to plaintiff's conduct. Of a similar situation it was said: "The court was bound to presume under the circumstances that their testimony would be unfavorable, and was for that reason suppressed. (Code Civ. Proc., sec. 1963, subds. 5, 6; section 2061, subds. 6, 7.)" (*Stedman* v. *Stedman,* 179 Cal. 288, 291 [176 P. 437].)

It is well understood that the conduct of parties and witnesses in the courtroom and on the stand is often of great assistance to the court in weighing the evidence and deciding the issues. But a favorable or unfavorable impression created by a courtroom appearance cannot supply the corroboration which the law requires in a divorce case.

In view of the extreme weakness of the evidence of defendant and cross-complainant, and the presumption which

arose from his failure to produce witnesses who could have given material evidence as to the alleged conduct of plaintiff, we conclude that the corroborative evidence was legally insufficient to support the finding of extreme cruelty. It is unnecessary to consider the failure to make a finding as to defendant's claimed desertion.

The judgment is reversed. The attempted appeal from the order denying a new trial is dismissed.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 7, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.