[Crim. No. 5171. Second Dist., Div. Three. July 15, 1954.]

THE PEOPLE, Respondent, v. HENRY B. CROWDER, Appellant.

Gerald J. Levie and Sam Bubrick for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—Henry B. Crowder was accused of four offenses of forgery and having waived trial by jury was convicted of three offenses. The instruments allegedly forged were four checks drawn upon the bank account of defendant's wife. Upon this appeal from the judgment appellant argues the insufficiency of the evidence to prove criminal intent and that it was error to permit his wife to testify against him.

Each count of the information alleged forgery of a check with intent to ''cheat and defraud'' defendant's wife, the banking institution on which the check was drawn and the teller who cashed the check. The checks were drawn, respectively, for $25, $10, $15 and $20, between the 4th of August and the 8th of September, 1953. Defendant signed his wife's name to each check and as payee endorsed and cashed the same. Mr. and Mrs. Crowder were living together at the time but separated shortly before the criminal charges were filed. Mrs. Crowder was employed; Mr. Crowder had been unemployed for several weeks but was employed at the time the checks were written. Mrs. Crowder had an account in the Bank of America but it cannot be ascertained from the evidence whether she transferred this account or opened another in the Citizens National Bank. There was evidence of the following facts: They had previously had a joint bank account which had several times been overdrawn by defendant. It was agreed that an account should be opened in the name of Mrs. Crowder and that she should have control of it. Money she earned went into the account but not money earned by Mr. Crowder. Mrs. Crowder was attempting to save money in preparation for the birth of an expected child. She testified that she did not give her husband authority to sign her name to any of the checks nor consent thereto.

We have concluded there was insufficient evidence to prove the element of criminal intent of the defendant. It appears to have been the theory of the People that in a prosecution for forgery every unauthorized signing of an instrument raises a presumption of an intent to cheat or defraud, although the statute (Pen. Code, § 470) makes a specific intent an element of the offense. (*People* v. *Turner*, 113 Cal. 278 [45 P. 331].) The case was tried on the transcript of the testimony at the preliminary, at which defendant did not testify, the testimony of defendant at the trial and brief testimony of Mrs. Crowder in rebuttal.

Upon her direct examination at the preliminary Mrs. Crowder testified that she had a bank account and that she

did not give her husband authority to sign any of the checks. Upon cross-examination she testified that she did not recall having received approximately $25 from her husband about September 8th, stating ''I have received a little money from him, I don't recall when—very little.'' Questioned further she testified that she received $35 from him in the early part of September. ▮ The People objected to a question on cross-examination whether she and her husband had separated at about that time and another question whether her husband had redeemed her typewriter for her at the time the $10 check was cashed. The objections were sustained. Questioned whether she had received money from her husband on or about August 28th she answered ''I believe that I could say no, because—well, I don't want to go into too much of our personal life, but at that time he wasn't providing at all for me—so I got no money from him.'' Questioned whether she received some of the proceeds of the $15 check of August 12th she answered ''I don't really remember. At this time, I didn't know about these checks, and I wasn't keeping track of whether I received money or not.'' but she finally testified that she did not receive any money at that time.

At the preliminary the People also introduced the testimony of a police officer who arrested defendant about September 13th. The witness testified that defendant admitted having signed and cashed the checks and explained the circumstances. The explanations which he gave were the same as those he related upon the stand.

At the trial defendant testified that he signed, endorsed and cashed the four checks, but insisted that he had authority from his wife to withdraw small amounts. As to a $20 check of August 4th (Count IV), he testified that he had been out of work; that he had just obtained employment; his suit was in pawn for $8.50; he explained the situation to his wife by telephone at her place of employment; she was greatly pleased; she told him he could check on her account; he redeemed his suit; they went out to dinner, for which he paid, and he gave his wife the rest of the money; that on several other occasions his wife consented to his drawing small sums from her account. As to the $15 check of August 12th (Count III), defendant testified that he used part of the money for food which he took home and that he gave his wife any balance of the money that remained. He got a job August 5th and was employed from that date ''on.'' Prior to that he had been unemployed for three or four weeks. Although he worked through August

he was not paid until early September. He testified as to the $25 check of September 8th (Count I), that he gave $35 to his wife the day he cashed the check, September 8th, but that she did not know until later that $25 of the money had come from her account. As to the $10 check of August 28th (Count II), defendant testified that he used the proceeds and something over $7.00 of his own funds to redeem Mrs. Crowder's typewriter which was pawned for $17; that Mrs. Crowder had need for it for some extra work and that he delivered the machine to her.

The People called Mrs. Crowder in rebuttal. She testified she was living with defendant between August 4th and September 8th but separated from him September 13th; that the account was put in her name by agreement because defendant had previously overdrawn a joint account. On cross-examination she testified that the money she earned went into the account, the money Mr. Crowder earned they lived on for about three months—"it was so little it just went for expenses right away."

The People deemed it of no importance what use defendant had made of the money he received on the checks, although this was the very heart of the case. (*People* v. *Brierton,* 132 Cal.App. 471 [23 P.2d 63].) This attitude was manifested first by the objection to the question asked Mrs. Crowder on cross-examination whether her husband had not taken her typewriter out of pawn. It was further manifested by ignoring the testimony of the defendant explaining how he had used the money. Altogether the checks amounted to $70. As previously mentioned, Mrs. Crowder testified that in the early part of September she received $35 from her husband. That left $35 unaccounted for. $17 was paid to get the typewriter out of pawn and $8.50 to redeem a suit of clothes the day defendant got a job. That left about $9.50 out of the $70. Defendant testified that he bought food for the home, took his wife out to dinner and gave her some money. When Mrs. Crowder was recalled, after defendant had testified, she was not questioned as to any of the incidents which he had related. She did not deny he cashed one check in order to redeem her typewriter, or that she had pawned it, or that he had paid $17 to redeem it and brought it home to her. She did not deny that he had telephoned her when he got a job, that they discussed getting his suit out of pawn and that she consented to his drawing money from the account for that purpose. She did not deny that he brought home food after

drawing money from the bank. She admitted that he used his earnings for the support of the family. The prosecutor did not question her about these matters and, as previously noted, objected successfully to her being questioned with respect to the redemption of the typewriter. He questioned her only as to the receipt of money from her husband and as to this she testified both ways. The only logical conclusion is that the People were willing to accept the testimony of the defendant in all material particulars with respect to the uses he had made of the money for redemption of the typewriter and his suit of clothes and for food.

Where the question of intent to defraud is an element of the offense charged the court must look to and weigh all the facts and circumstances which shed light upon the motives of the accused. (*People* v. *Eastman*, 77 Cal. 171 [19 P. 266].) We shall review what we deem to be important, surrounding facts.

Mr. and Mrs. Crowder were living together. So far as shown there was no thought of separation. Mrs. Crowder was employed; Mr. Crowder had not been steadily employed. When he was employed his earnings were used for the support of the family. For several weeks prior to August he had been out of work. He was looking for work. For three or four months previous to that the family had been supported by his earnings. Commencing August 5th he had a new job with a finance company. He and Mrs. Crowder were greatly pleased. It was not until he obtained employment that he drew checks on his wife's account. If he did so without authority it was with a salary in sight from which she could be reimbursed. He would not be paid until September 1st for his work during August. A few days after he gave Mrs. Crowder $35 she separated from him. She did not demand that he reimburse her nor did he indicate that he would not do so. She left him, and a few days thereafter had him arrested.

In judging of the sufficiency of the evidence effect must be given to the presumption that if the prosecutor had questioned Mrs. Crowder with respect to her knowledge of the use her husband had made of the money, her answers would have been adverse to the prosecution and would have tended to corroborate his testimony. (Code Civ. Proc., § 1963, subds. 5, 6; *Julson* v. *Julson*, 110 Cal.App.2d 797 [243 P.2d 558] ; *People* v. *Alkow*, 97 Cal.App.2d 797 [218 P.2d 607] ; 10 Cal.Jur., § 87, p. 781.) We may not overlook the conflicts in the testimony of Mrs. Crowder. She testified she could

not remember what money she received during the month of August; that she kept no account of it; it was in small amounts. In one breath she denied having received money from her husband in the early part of September and in the next admitted having received $35.00. It was error to sustain the People's objection on cross-examination whether, at the time one check was cashed, her husband had not taken her typewriter out of pawn for her. In view of her denial that she had authorized him to issue any checks on her account the question was not only proper but highly important on cross-examination. While the ruling was made at the preliminary we would suppose that where the preliminary transcript is used by the People at the trial objections made at the preliminary are reserved and rulings thereon are approved by the trial judge, in the absence of any declaration or ruling to the contrary. However, the matter is unimportant in view of the fact that it should be presumed that Mrs. Crowder's answer to the question would have been favorable to the defendant.

There was sufficient evidence to prove that the withdrawals of money were not authorized but that fact alone did not prove the charges of forgery. The use defendant made of the money was the principal factor in determining his intent. He was acquitted on Count I, the $25 check, presumably because he gave his wife the money, but was convicted on Count II, the $10 check transaction, in which he used that money, plus $7.00, in addition, to redeem her typewriter for her. He was convicted of Count III, the $15 check transaction, concerning which Mrs. Crowder was asked whether she had not received that money and answered ''I really don't remember.'' He was convicted of Count IV, which involved the $20 check which was cashed when defendant learned he was going to work the next day, the money from which, he testified, was used to redeem his suit, and to buy food for the home.

There was no evidence that defendant used any of the money for himself, or squandered it, or used it for any purpose other than to meet the needs of the family. There was no evidence as to how the family was supported during August, other than the testimony of defendant as to his purchases of food. Mrs. Crowder did not testify that she bought any food. Although it had been agreed that Mrs. Crowder should have control of the bank account, which, in fact, she had as a matter of law, with respect to her own earnings, the

money was not for that reason her separate property (Civ. Code, § 171c), and there was no agreement that her earnings would be her separate property. There was a special reason for putting aside some of the wife's savings but that purpose was for meeting expenses of the community. The fact that the bank account was community property did not give defendant the right to sign his wife's name to checks but it had a most significant bearing upon his motives. If defendant had made off with community funds under circumstances which indicated that he intended thereby to cheat and defraud his wife of her community interest therein an entirely different question would have been presented. Can it be the law that a husband or wife spends each community dollar in the shadow of the Penal Code? ██ It is sufficient to say presently that no fraudulent intent could be inferred from the use of the greater part of the money for the needs of the family and the retention of the remaining few dollars in the husband's pocket.

We are aware of no case in which conviction of forgery or any other offense has been upheld upon a state of facts comparable to those we have set forth. We think no one can deny that wives and husbands frequently use small sums of money nominally belonging to or under the control of the other spouse for mere convenience or the necessities of the family. And who would say that this is petit theft? Forgery, of course, is a serious offense but this is for the reason that it is a method of cheating which if tolerated would disrupt the most common and necessary method of dealing in credit. ██ But there can be no forgery unless there exists a criminal intent and this is a fact to be proved. ██ Normally an intent to defraud may be, and often must be inferred from the circumstances in which a false instrument is executed or issued. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 687 [161 P.2d 833]; *People* v. *Adair*, 3 Cal.App.2d 323 [39 P.2d 274].) ██ And it may not be doubted that a husband or wife may be guilty of forgery, through the issuance of a false document with intent to cheat or defraud the other. (*People* v. *Graff*, 59 Cal.App. 706 [211 P. 829]; *People* v. *Brierton*, 132 Cal.App. 471, *supra*.) But as between the spouses there is no more criminality in taking small sums from a bank account than there would be in taking them from a wallet or a handbag. We repeat that we can find no legally sufficient evidence of a fraudulent intent on the part of defendant, how-

ever ill advised his actions may have been. Just when he commenced to reimburse his wife for the withdrawals from the bank she left him and had him arrested.

Defendant contends that in every case of the forgery of a check the bank alone will suffer since if the check is honored the depositor cannot be charged with the amount. For this reason, it is argued, the testimony of Mrs. Crowder could not be used against her husband, and it should have been stricken on his motion. It is unnecessary to discuss this contention. We may observe, however, that it was the manifest intention of defendant to claim he had authority from his wife to draw checks in her name upon the account. Had he succeeded in establishing that claim the bank would have lost nothing. Had he failed and actually defrauded his wife, the bank might have had to reimburse her. We do not say that both the depositor and the bank may not be defrauded by a forged check but inasmuch as we hold there was insufficient evidence to prove that defendant acted with fraudulent intent, it was insufficient to prove that he intended to commit a fraud upon the bank. ■■■ If defendant acted in the honest belief that he had a right to use, and if he did use the funds for the joint benefit of himself and his wife, and especially if he intended to reimburse the account, he was not guilty of forgery.

We hold that in the light of the presumption that if the wife had testified as to the use her husband made of the money her testimony would have tended to show that he used it for the needs of the family, and in the absence of any evidence that he made any other use of it, the evidence was legally insufficient to establish his guilt of forgery. Upon the point of the failure of the prosecution to question witnesses as to material facts within their knowledge we direct attention to our remarks in *People* v. *Alkow,* 97 Cal.App.2d 797, 802, *supra.*

The judgment is reversed and the superior court is directed to dismiss the action.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 23, 1954, and respondent's petition for a hearing by the Supreme Court was denied August 10, 1954.