[Crim. No. 1924. Fourth Dist. Sept. 28, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CONSTANCE LEE COKE, Defendant and Appellant.

Charles W. Decker for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant Constance Lee Coke was charged in an information with violations of Penal Code, sections 484-487 (grand theft), in that about March 15, 1962, she did feloniously take money in excess of $200 belonging to Harbour Realty Corporation and Walnut Partners. She entered a plea of not guilty after hearing on a motion to set aside the information under Penal Code, section 995. Defendant was found guilty as charged by a jury. A motion for new trial was denied and defendant was sentenced to state prison. Defendant, in propria persona, filed a notice of appeal.

### FACTS

Defendant applied for a position as PBX-receptionist at a multicorporate real estate development firm which had extensive subdivision operations, but being found to be better qualified as a bookkeeper she was employed in that capacity. As part of her duties, she received certain funds, including buyers' deposits on home purchases and moneys paid by home buyers for optional extras to be installed in their homes. Upon defendant's giving notice of her intention to quit, her employer sought an audit of the books. The audit revealed that funds in excess of $8,000 were missing from the buyers' extras account, which account was primarily defendant's obligation to administer. There was some evidence that these shortages could have resulted from extras given away by salesmen as added inducements for home purchases, or from careless money handling procedures within the accounting office generally. There was sufficient other evidence of her having received the funds. She was in charge of them when they disappeared.

One Kenneth E. Brown was chief accountant and treasurer and was directly in charge of several girl employees. He interviewed these employees and hired them, including

defendant, and assigned them their duties. Defendant had applied for work under the name of Lee Marshall and was assigned as a bookkeeper. She had to account to Mr. Brown for her work. She was the only person authorized to post entries in the various books connected with the Harbour Realty Company. She received from salesmen downpayments from the sale of houses and deposits thereon, and she was supposed to deposit these sums in various banks and in escrow. She had access to the safe, to the money and to the records. There were others who had access to the safe vault, but she was the only one who posted entries in the books and the only one who determined any shortages. During the entire year she worked she never reported any shortage or discrepancy. She later married and assumed the name of Constance Lee Coke.

A certified public accountant spent many hours checking the accounts and transactions and first found the accounts correct but later, after a different check, found many buyers' extras forms to be missing from the files in defendant's office, reflecting the fact that money had been received and that there was no posting in the ledger for these amounts. The audit disclosed that the buyers' extras checks were substantiated for downpayment in cash, but no record was made of the cash receipts. Also, some items were accounted for by misfiling, but $8,000 was found to be missing during the year of the audit period.

The audit commenced on June 1, 1962, and defendant left the firm on June 6, 1962. About two or three months before the audit, Mr. Brown discussed with defendant a shortage of about five or six hundred dollars from ''buyers' extras'' and ''down-payments,'' which should have been in the vault in cash but which was not there. He had reported this to his superior. Mr. Brown presented documents to defendant which represented such a shortage. Two hours later she brought the buyers' deposits forms, which were not in the safe, with the proper amount of money in cash attached to them. She was supposed to keep all cash in the safe.

L. B. Harbour, Jr., a general contractor, called defendant into his office when the audit was ordered and told her that her husband had telephoned him anu stated defendant was bringing home certain amounts of money for which she had not satisfactorily accounted to him; that she had told him that some of the money was from bonuses which the company was paying her; Mr. Harbour said to her that he told her

husband this was information not available to the public. The court struck Mr. Harbour's testimony that he received a call from defendant's husband because Mr. Harbour could not identify defendant's husband's voice, but Mr. Harbour's statement to defendant and her response thereto were properly admitted. Mr. Harbour testified that defendant became very emotional and cried when told of the conversation with her husband. Apparently no bonuses of any sort were being paid by the company except a bonus of $300 at Christmas time and possibly profit-sharing distributions accruing to her account.

Richard P. Simpson, a certified public accountant, testified that he performed the audit in June 1962; that he found that the sales receipts indicated that more sales had been made than were recorded in the books and that copies were missing. Checks were produced showing that actual payments had been made by the buyer in several cases and no entry was made in the books of such payments. The auditor found sales that were not recorded in the books and money received therefrom that was not in the bank.

A police officer testified that about June 29, 1960, he investigated a theft or shortage in the books of a Packard-Bell distributor. Defendant was their bookkeeper at that time. He said that he interviewed defendant and she made a voluntary statement after being presented with numerous invoices; that she stated that she took the money (around $1,000) by fraudulent means and used it for her own purposes; that she forged her name to many checks which were payable to her employer and cashed them; that the reason she did so was to try to impress a boy friend. She also admitted taking money in a similar manner to that here employed from another company in Santa Ana totaling about $2,000 while working as a bookkeeper there. She said that she had made so many false entries and taken so much money that she could not recall the total amount of her thefts.

One Theodore C. Bentley was in a similar business as the Butler-Harbour Company during 1960. He employed defendant as a bookkeeper and put her in charge of the accounting department. Shortages appeared in the books. Duplicate checks had been issued for one disbursement in the sum of $550 and one of·these checks was missing from the bank statement. This check had been cashed personally by defendant. She was confronted with these checks in the presence of her employer's auditor and she became emotionally dis-

turbed and stated that she had cashed the check and removed it from the cancelled checks.

One Anita Louise Gerfen testified that about August 1, 1962, while she and defendant were incarcerated in the same cell in the county jail, defendant told her that she had taken money in small amounts from the place where she worked and that she would be accused of taking about $7,000, but that she thought what she took was somewhere between twenty-five hundred to thirty-five hundred dollars and that she took it home and told her husband "it was bonuses that she had earned," and that she "had taken the cash and transferred papers, and things around so complicated she didn't see how anyone could prove how she had taken it"; that she took the money in cash; that she told Mrs. Gerfen that she had been convicted of embezzlement in connection with another company for which she worked, and had done it before; that the only time before she had been caught was because she had signed some papers, but that she hadn't signed any papers this time and that was why she didn't think they could prove anything.

An officer called on Anita Gerfen in the jail and she executed a signed statement in the presence of witnesses stating the conversation that she had had with the defendant.

In defense, defendant produced an investigator for the bonding company which bonded the employees of the company here involved. This investigator stated that after his investigation he had offered to reimburse the company in the sum of $7,513 in payment of the shortages as a result of the theft.

Defendant testified that she was in the county jail with Anita Gerfen, and was booked for violation of her parole on another charge (taking money from other employers); that she had been sentenced to one year in the county jail, but after serving four months she was paroled for two years. Defendant stated that she was under parole supervision when she applied to this company for the PBX-receptionist job but that she did not tell them of this, but that her parole officer was aware that she had obtained the position as a bookkeeper with this firm. Defendant claims that her employer at this company did know that she had previously been in jail because she had told him this the day he called her into his office about employing an auditor. Defendant described in full her operations as a bookkeeper and the responsibility placed upon her. She stated that when she took the money

home and her husband inquired about it, she told him that her former husband had paid up his alimony; that she said this because it would have upset him to know her former husband was delinquent in his alimony or child support.

Defendant said that she had a certain amount of money that she had to pay in restitution of the offense of which she had been previously convicted. It appears that defendant was being paid $375 per month for her services as bookkeeper with the instant company. Her husband was attending college and had taken a one-year leave of absence from his employment with the state. During this time he and defendant purchased one of the tract homes in Dana Point on a land sale contract. She purchased a Falcon car and they spent weekends in camping trips at Mt. Palomar. Defendant's husband had his own car and they provided for her two children by a former marriage.

Defendant testified and asserted her innocence at the trial. She conceded that the checks for buyers' extras should not have been included in the transmittal of deposits to the A and B Escrow Company, but testified as to how this could have occurred.

On this appeal, defendant first claims that the evidence is entirely circumstantial and the most that can be said is that her duties were such as to give her access to the missing funds, but that there is no evidence that she, herself, received any of the missing funds. (Citing *People* v. *Alkow*, 97 Cal.App.2d 797 [218 P.2d 607].)

A mere recitation of the facts above stated indicates that there was more than $200 missing which had been taken by someone. Even though others may have had access to the vault, the entire entry in the books of the receipts was the responsibility of defendant, and the books did not contain such entry when it was established that the money was paid to the company through her.

There was a sufficient prima facie showing of defendant's guilt to establish the corpus delicti and admit the testimony of the witness to whom defendant is claimed to have confessed appropriations to the extent of twenty-five to thirty-five hundred dollars. It has been said that to establish the corpus delicti, it is not essential to show beyond a reasonable doubt that the crime charged was committed by the defendant. (*People* v. *Fronk*, 82 Cal.App. 465 [255 P. 777]; *People* v. *Moe*, 116 Cal.App. 740, 756 [3 P.2d 354, 4 P.2d 234]; *People* v. *Rowland*, 12 Cal.App. 6 [106 P.

428]; *People* v. *Ward,* 134 Cal. 301, 306 [66 P. 372].)
■ The evidence shows that the grand theft was committed by someone. The extrajudicial statement and other circumstances sufficiently show identity of the person taking the funds, which the jury was entitled to and did believe. We see no merit to the claim that there were unexplained "gaps" in the prosecution's case. (14 Cal.Jur.2d, Criminal Law, § 4, pp. 183-184 and cases cited; *People* v. *Garcia,* 101 Cal.App. 213, 216 [281 P. 508]; *People* v. *Burman,* 138 Cal.App.2d 216 [291 P.2d 49].) *People* v. *Riley,* 217 Cal.App. 2d 11 [31 Cal.Rptr. 404] and *People* v. *Hodges,* 153 Cal. App.2d 788 [315 P.2d 38], relied upon by defendant, are not opposed to this construction.

■ Prejudicial error is claimed in permitting, over objections, evidence of prior offenses, on a theory of similarity of modi operandi which defendant claims were unrelated. There was sufficient evidence of the similarity of the modi operandi in the other offenses to show common scheme, design, plan or system. (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924].)

The trial court gave an instruction in the general form of CALJIC No. 33, to the effect that the evidence as to the commission of other offenses was admitted for a limited purpose. The limited purposes are fully set forth, including plan, scheme, system or design, into which fitted, to some degree, the commission of the offense for which she was then on trial. No prejudicial error was committed in this respect.

■ Misconduct of the prosecution is claimed in respect to the cross-examination of defendant. The prosecutor asked about her use of a post office box located between her place of employment and her home. She stated that she had such a post office box and used it for her convenience and that she purchased money orders there because, under the terms of her parole, she was not permitted to maintain a checking account. She was questioned about her purchase of two automobiles in one week and about weekend trips, but the questions elicited only denials. After defendant had denied that she had taken home substantial sums of money on a number of occasions "so that her husband was extremely alarmed," the prosecutor asked defendant if it was not a fact that her husband was so alarmed; that he called her probation officer and reported to him that his wife was taking home from work extra money which she claimed

represented bonuses; that the husband had checked it and it was not bonuses and he wanted to know what was going on. Defendant denied knowledge of such a conversation. The prosecutor then attempted to call the probation officer for the purpose of impeachment, and, on objection by counsel for defendant, the trial court sustained the objection. In respect to this question, and the one following about a conversation the husband had with the probation officer about his wife's receiving $300 from one Ralph O'Brien, the court likewise sustained an objection. Counsel for defendant then asked the prosecution if it was going to call Mr. O'Brien and the prosecutor said that he did not even know him and that he could not call her husband as a witness against defendant. We do not believe the questions were asked in bad faith. The court properly sustained the objections and gave a general instruction to the effect that the jury should not consider any questions to which an objection had been sustained or what the answers might have been. We perceive no prejudicial error in this respect. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

■ Objections likewise were made to the prosecution's argument laying emphasis upon the testimony of defendant's cellmate as to defendant's claimed admissions. This the prosecutor had the right to do.

■ In discussing the claimed bonuses and defendant's conversation with her husband in relation thereto, and defendant's other claimed misappropriations of her employers' money, the prosecutor branded defendant as a "pathological thief" and "liar." This reference to defendant is not to be commended and may have exceeded the bounds of fair comment. The question of the truth of defendant's testimony was a factual question for the jury. We do not believe the comments were such as to constitute prejudicial error under the circumstances. (*People* v. *Watts*, 198 Cal. 776, 792 [247 P. 884]; *People* v. *Putnam*, 20 Cal.2d 885, 892 [129 P.2d 367].)

■ Complaint is made because the trial court permitted a boy to sit with him on the bench one day as a school assignment in social studies, and the judge introduced him as his "assistant." Defendant claims this was a violation of due judicial process and full protection of defendant's rights. We are at a loss to see how defendant's rights were violated to the extent that she did not have a fair and impartial trial because of this occurrence. No objection was

made to it at the time. It cannot be raised for the first time on appeal. (*Crocker* v. *Carpenter*, 98 Cal. 418, 421 [33 P. 271].)

Lastly, complaint is made because defendant was returned from Oroville, California, where she and her husband were staying, for violation of her parole, to which place "she moved without permission." It is claimed that, in fact, she was returned because of this investigation and that she should have been told of this fact. We do not see how this action, even if true, affected her rights at the time of trial.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.