**Buell ANAKAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4933.**

Supreme Court of Alaska.

Dec. 12, 1980.

---

Steven G. Marks, Asst. Public Defender, Juneau, and Brian Shortell, Public Defender, Anchorage, for appellant.

Michael J. Stark, Asst. Dist. Atty., Patrick J. Gullufsen, Dist. Atty., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

PER CURIAM.

Buell Anakak was convicted of forgery. He signed his supervisor's name without authorization to a $600 check made out to himself, and then cashed that check at a local bank. At trial the state requested an instruction to the jury that they should not consider whether Anakak intended to repay the money as relevant to the question of whether Anakak intended to injure or defraud another by his forgery.[1] Over Anakak's opposition, and after extensive discussion, Judge Compton gave the requested instruction. Anakak claims this was error.

Anakak was hired as a bookkeeper at St. Ann's Nursing Home in Juneau on January 23, 1979. As part of his duties he prepared checks for signing by the administrator, Jack Buck. Buck explained to Anakak St. Ann's policy that St. Ann's personnel could draw 80% of their earned pay at mid–month. New employees were entitled to an earlier advance, and Anakak availed himself of this, drawing $60 on his second day of work.

The events leading to Anakak's conviction took place on January 29, Anakak's fifth working day. On that day he prepared the $600 check made out to himself and put it on his desk, hoping, he testified, to present it to Buck. Anakak said he believed he was entitled to the $600 as a pay advance, even though he had only worked a few days. He left St. Ann's early to register at the University, and when he returned everyone at work was gone. Anakak then decided to sign the check himself and cash it. The check stated that the $600 represented advance pay. Since Anakak's monthly salary was only $1350, he had not earned $600 salary in five days.

Anakak testified that, realizing the gravity of his situation, he did not go to work the next day, but instead tried to call Buck. When he reached Buck, either that day or the next, he initially denied any knowledge of the check, which Buck had by then determined was missing. He attributed his denial to fear. However, after his arrest on February 2, Anakak wrote a letter to Buck, explaining that he had intended to replace the money he had taken.

We find no error in Judge Compton's ruling on the disputed instruction under the

---

1. Former AS 11.25.020, in effect at the time of Anakak's offense, provided:

   "A person who, with intent to injure or defraud another (1) makes, alters, forges, or counterfeits a bank bill, promissory note, draft, check, or other evidence of debt issued by a person or by the federal government, the state, a state or territory of the United States, or another state, government, or country, or by a corporation, company, or person authorized by law to issue evidence of debt; or (2)

   knowingly utters, publishes, passes, or tenders in payment as true and genuine, a false, altered, forged, or counterfeited bill, note, draft, check, or other evidence of debt, or has in his possession that evidence of debt, with intent to utter or pass it as true and genuine, knowing it to be false, altered, forged, or counterfeited, is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years."

facts of this case. This result is in accordance with the general rule that

> "[a]n intent to use a false writing to gain some advantage is an intent to defraud *even if the wrongdoer has an intent to make reparation at some future time.*" (emphasis added).

R. Perkins, Criminal Law, 353–54 (2d ed. 1969).

The cases cited by Anakak in support of a contrary rule are distinguishable from the facts presented here. Under the rule announced in those cases, Anakak's evidence of repayment would have been relevant to show a lack of intent to defraud only if he believed he had authority to sign his employer's name to the check, *People v. Brauver*, 229 Cal.App.2d 303, 40 Cal.Rptr. 142, 143–44 (1964); *People v. Crowder*, 126 Cal. App.2d 578, 272 P.2d 775, 777–78, 780

(1954)[2] or had he not known the forged instrument was false, *People v. Katzman*, 258 Cal.App.2d 777, 66 Cal.Rptr. 319, 329 (1968). Anakak testified he knew he had no authority to sign Buck's name to the check, and he knew the forged instrument was not genuine. Anakak cannot, therefore, avail himself of either exception and the general rule adopted above controls. The judgment of conviction is accordingly AFFIRMED.

BOOCHEVER, J., not participating.

---

2. In reversing the conviction in *People v. Crowder*, 126 Cal.App.2d 578, 272 P.2d 775 (1954), the court relied heavily on evidence showing the money received from the forged checks was spent on family necessities. *Id.* 272 P.2d at 779. In the court's view, this evidence tended to negate proof of a specific intent to defraud. Nothing in this record, however, indicates Anakak intended to use the money from the forged check for any purpose other than his own.