[Crim. No. 4654. Second Dist., Div. Two. Oct. 23, 1951.]

THE PEOPLE, Respondent, v. RAYMOND EDWARD FARRELL et al., Defendants; THOMAS PHILIP FARRELL, Appellant.

26

James M. Fizzolio and C. Thomas Fizzolio for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant and his brother Raymond were accused by information of robbery. Raymond pleaded guilty and after trial appellant was convicted by the court without a jury and sentenced to prison for the term prescribed by law. This is an appeal from such judgment.

About noon on September 26, 1950, John Hirsch, an armed

guard messenger for an armored transport company, called at a suburban market on West Slauson Avenue, received a sealed canvas bag and made his exit through the rear door. As he emerged from the building he was "poked in the back" by a strange man who held a trench coat over his right arm. The stranger took Hirsch's gun and the canvas bag, and after conducting the messenger a short distance, the robber disappeared "into the bushes."

About midnight November 1, 1950, police officers of the city of Los Angeles, acting upon information recently received, knocked at the door of defendants and ordered them to come out. Raymond emerged from the residence and after gaining entrance the officers found appellant in a back bedroom. In searching the premises they found the pistol which had been taken from John Hirsch, also a Japanese automatic which appellant had borrowed from one Huff.

Raymond confessed to the robbery of the transport messenger on September 26 and gave details of the crime. Thereafter Deputy Sheriff Irving brought the brothers into a conference and requested Raymond to repeat his narrative in order to straighten out the discrepancies. Thereupon Raymond stated that he and appellant left home about 10 o'clock in appellant's station wagon and after procuring additional gasoline they parked at the "Wich Stand." About 20 minutes prior to the robbery they drove into the parking lot of the Mayfair market. There Raymond alighted from the station wagon and stood by until the armored car approached the market; appellant immediately drove from the parking lot to the adjoining street and Raymond entered the rear of the market where he waited until Hirsch came out with the moneybag. He held the Japanese automatic in Hirsch's back, walked him across the parking lot, took the moneybag, reentered the station wagon and appellant drove it away. On arriving at home they divided $2,200 in money evenly and burned the checks in the incinerator. During the statement of Raymond appellant was silent. He was then asked by Irving what he had to say. He replied, "What do you want me to say?" He was then asked if there were any changes he would like to make in Raymond's statement. His reply was, "the only thing I have got to say is that I didn't put a gun in anybody's back and I didn't hold up any armed truck. I don't know anything about any robbery." He denied that he had made such a trip as described by Raymond and did not remember what he did on that day. He said Raymond had never dis-

cussed the matter since the day of the robbery and declared that he knew "nothing about any robbery."

Raymond did not testify at the trial.

The next item of proof was the testimony of the witness John Faulkner who met the defendants on October 31, 1950, at a café where Raymond requested Faulkner to meet the brothers for a conference at a West Boulevard bar on the following day. On November 1 Faulkner visited the Hilltop Bar, imbibed some drinks and from there went to the bar on West Boulevard as requested by Raymond. Defendants were present when Faulkner arrived. The three sat at the bar drinking when Raymond said, "I want to pull a job; I want to take the gas company out there where I used to work. We have got to have a third man." Faulkner said, "Why all this Ray?" The reply was, "well I worked there, I can't go in; I'd be recognized; I want you and Tommy to go in; I'll sit in the automobile. . . . We took the Mayfair up there within about three minutes and never been nothing said about that; we got $2,200 out of the deal; $1,100 apiece." Faulkner asked Ray whether he was crazy and one of the brothers said, "John is too loaded up to talk sense." The defendants conveyed Faulkner back to the Hilltop café. At no time did appellant deny any portion of the statement made by Raymond to Faulkner concerning the robbery of the messenger at the Mayfair market. He claimed that he did not hear it.

Evidence was received to the effect that eight days before the robbery appellant forged the name of a Mrs. Fiorito to a check for the sum of $600; that five days later he learned she was returning to the state; that Mrs. Raymond Farrell made a deposit of $600 to Mrs. Fiorito's account prior to her arrival from the east about October 1.

The contention is made that appellant was not concerned with the crime; that there was no proof that he aided or abetted Raymond or that he conceived or directed the robbery. But in view of appellant's silence while Raymond told of the banditry, of his failure promptly to deny any of Raymond's statements made to the deputy sheriff, his acquisition of the Japanese pistol in August and his purchase of the .32 automatic three days before the robbery, his denial to Officer Irving of knowledge that there were any guns in Raymond's house, his impecunious condition at the same time—there is ample proof to support the conviction.

In addition to such evidence the trial judge was justified in drawing many reasonable inferences from the facts established. (*People* v. *Hennessey*, 201 Cal. 568, 571 [258 P. 49]; *People*

v. *Latham*, 43 Cal.App.2d 35, 38 [110 P.2d 101].) Appellant's want of funds on September 18 impelled him to forge Mrs. Fiorito's name to a check. That he was in such dire penury as to be driven to commit a felony is some proof of a motive for robbery and it is a fair inference that appellant had a burning motive to participate in the robbery on September 26 which was committed in his presence where he made no protest, but with the actual robber took flight from the scene. (*People* v. *Gonzales*, 87 Cal.App.2d 867, 877 [198 P.2d 81].) Also, from the proof that appellant borrowed the Japanese pistol in August and purchased an automatic revolver about the middle of September, it was a logical inference that appellant was preparing to commit a crime. The acquisition of such an armory just prior to a robbery at which appellant was present impels the deduction that appellant was there as a conscious participant. (*People* v. *Bolton*, 215 Cal. 12, 19 [8 P.2d 116].) Especially is such inference warranted in view of appellant's declaration to the deputy sheriff that he knew nothing of the guns and did not know that there were any guns in Raymond's house, notwithstanding the fact that one of them had been borrowed by appellant.

Deception and falsehood as to the facts under investigation are evidence of a consciousness of guilt. (*People* v. *Cole*, 141 Cal. 88, 89 [74 P. 547]; *People* v. *Miller*, 19 Cal. App.2d 708, 709 [66 P.2d 448].) At no time when the details of the Mayfair robbery were stated did appellant act as an innocent person would have acted under the circumstances. He did not denounce his brother's statement as a pack of lies or as a fantasy or as a dream—as a normal, innocent person would have done. Therefore, his statements and his conduct were admissible as tending to show an implied admission of the truth of the statements made. (*People* v. *Cooper*, 81 Cal.App.2d 110, 117 [183 P.2d 67]; *People* v. *Bridges*, 73 Cal.App.2d 913, 914 [167 P.2d 793].)

In testifying in his own behalf appellant's explanation of his driving his station wagon to meet Faulkner on November 1 was that he had nothing else to do. He testified that when they met Faulkner the latter was so intoxicated the bartender refused to serve him liquor. It is not to be forgotten, however, that Faulkner was not so drunk as to fail to notify the police of the robbery reported to him by Raymond in the hearing of appellant. Faulkner's credibility in telling the story of the conference while the three men drank together was for the court's determination. (*People* v. *Robinson*, 49

Cal.App.2d 576, 579 [122 P.2d 77].) Under all the circumstances it was not an unreasonable inference that appellant's failure to deny or to attempt to refute the statements of his brother was an admission that the two had previously committed the robbery of the messenger at the Mayfair market. Also, his bland dismissal of Faulkner with the statement that he was drunk while the three men conversed at the West Boulevard bar does not adequately overcome the bold testimony of a truthful man who would not fall for the seductive arguments of Raymond Farrell.

At the conclusion of the trial the court stated that he would regard the statements of appellant in response to the accusatory statement made by Raymond to the officer as out of the record and that he would regard the accusatory statement as denied by appellant. Such declaration by the court does not remove from the record the proof of the complacency of appellant as Raymond repeated the story of the robbery or of appellant's childish denial in court of all knowledge of the crime. However the trial court may have considered it, evidence of appellant's conduct is still in the record. There was no motion to strike it and no objection made on its introduction. If it was stricken, it is hereby restored. ■ Where a party is accused of a crime and makes evasive or equivocal reply, both the statement and the fact of the failure to deny or his equivocal reply are admissible as evidence of the acquiescence of the accused in the truth of the statement or as indicative of a consciousness of guilt. (*People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18].) There was no showing that on either occasion when in his presence appellant was accused of having participated in the robbery he was menaced, or given promises of his exculpation, or that he was persuaded by any arguments to make a response. Neither did he declare that he was maintaining a policy of silence.

In *People* v. *Newman*, 24 Cal.2d 168 [148 P.2d 4, 152 A.L.R. 365], notwithstanding the trial court struck out the testimony of an expert witness concerning betting markers, on appeal it was held that the evidence was erroneously stricken and it was given the same effect as though the order striking it had not been made by the trial court. (P. 177.) "As this evidence against the appellant was admitted during the trial, the appellant was confronted with it after its admission up to the final submission of the case, and as we have seen he made no attempt to controvert it. Had the trial court not made its erroneous order, the appellant would have been in the same situation as he is now in, if we give consideration to the

stricken evidence in determining the question as to whether there is evidentiary support of the judgment.''

Despite industrious effort of his counsel to exculpate him, the conclusion of the trial judge to send appellant to prison along with his brother is a just judgment.

Affirmed.

McComb, J., concurred.