[Crim. No. 6437. Second Dist., Div. One. Mar. 6, 1959.]

THE PEOPLE, Respondent, v. WARREN JAMES LEACH, Appellant.

Gilda R. Cohen for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment and ''sentence,'' and from an order denying appellant's motion for a new trial in a cause wherein the appellant was found guilty on four counts of forgery.

In an information filed in Los Angeles County the appellant and his codefendant Eddie Marie Kemp were charged with five counts of crime. In count I the information alleged that the defendants committed the crime of grand theft in violation of section 487, subdivision 3 of the Penal Code. In count II the information alleged that the defendants committed the crime of forgery of fictitious names in violation of section 470, Penal Code. In counts III, IV and V the information alleged that the defendants committed the crimes of forgery in violation of section 470, Penal Code.

The information further set forth and alleged that the appellant had previously been convicted of the crime of "attempted robbery bank messenger" in the District Court of the United States (Southern District of California), and was sentenced to, and served a term therefor in the federal prison; and that in March, 1953, he had been convicted of the crime of bigamy in Los Angeles County, and of the crime of forgery in Los Angeles County, and was sentenced to, and served a term therefor in the state prison.

The appellant pleaded not guilty and denied the prior convictions. A jury trial was waived and the cause was heard by the judge. Appellant was found guilty of counts II, III, IV and V, and further it was found that the appellant had been previously convicted of the prior felonies as charged in the information. Count I was dismissed because the judge was of the belief that count I was but a different statement of the offense as charged in count II.

A motion for a new trial and probation was denied and the appellant was sentenced to the state prison for the time prescribed by law.

The appeal is from the judgment and "sentence" and from the order denying appellant's motion for a new trial. ██ No appeal lies from a sentence. (*People* v. *Gallardo,* 41 Cal.2d 57, 60 [257 P.2d 29].)

██ A résumé of the facts with reference to counts I and II is as follows: On March 6, 1958, the defendants went to a second hand car lot operated by the B & G Auto Sales Company. There the appellant, with his codefendant, negotiated with a salesman of the car sales lot for the purchase of a 1950 Oldsmobile automobile for the price of $393.60. The appellant signed a "Used Car Purchase Order" wherein, among other things, it was set forth that "[a]s the terms of this contract and the credit extended to me are predicated

upon *th* correctness of my statements herein, and in my purchaser's statement, I warrant them to be true and correct.''

Appellant also signed an ''Application for Credit'' in the car transaction, wherein he set forth that his name was ''Craig James Garland'' and that his wife's name was ''Edyth.'' At the trial a police officer stated that appellant had told him, in referring to the name used in the documents, ''The name Craig is the first name of my son. The second name James is my name and the last name I just got out of the air.''

Appellant stated in the signed documents in the car transaction that his address was ''1434 E. 121st Street'' and that he had lived there two and one-half years; that his occupation was that of a roofer, that he had a salary of $600 per month and was then and had been employed by ''Leader Bros.'' of 3847 West 108th Street for seven years. He further stated in writing that his wife's occupation was that of ''housewife,'' that they rented a house from a Mr. Zubriski of 1434½ East 121st Street. He gave the name of a friend as George Gist of ''77 St. opp. pol. sta.''

By his own testimony he disclosed that he had only worked for the Leader Roofing Company a few days since his release from prison in November, 1957, and that he was not employed at the time of his dealing with the car salesman; further that he had not been steadily employed for seven years because he had been in prison, and that he did not tell the salesman of his prison record and did not want him to know the truth. He further testified that his true name was Warren James Leach and that the name he used was just made up for the transaction; that he never resided at the address he gave and that it was fictitious for the purposes of the transaction, and that he was not married.

The appellant was released from prison in November, 1957, and apparently, for the first month upon his release he lived with his mother. Thereafter he lived in a common-law relationship with the codefendant until he was arrested in, and extradited from Texas on the present charges.

A policeman testified that the appellant told him, with reference to the car transaction, ''That is a phony all the way through.'' Phony is defined in Webster's New International Dictionary, 2d edition, as meaning—not straight or genuine; counterfeit, fake or faked (slang, U.S.). Based upon the information received from the appellant in the application for credit and the used car purchase order, and relying on the truth of such information, a conditional sales contract was

executed and delivery and possession of the Oldsmobile car was made to the appellant.

The appellant asserts, as to count II, that the judgment was not supported by the evidence and that the corpus delicti was not proved. Appellant insists that there was no showing of any element of intent to defraud the B & G Motors Company. He states that one can adopt for innocent purposes a fictitious name and not be guilty of forgery. Such is undoubtedly true, but that is not the fact situation in the present case. ▆ An intent to defraud is a necessary element of forgery. (*People* v. *Crowder,* 126 Cal.App.2d 578, 585 [272 P.2d 775].) ▆ Such an intent has been defined as an intent to deprive another of a right, "either by procuring something by deception or artifice, or by appropriating something wrongfully." (*People* v. *Wilkins,* 67 Cal.App. 758, 762 [228 P. 367], quoted in *People* v. *Griffith,* 120 Cal.App.2d 873, 881 [262 P.2d 355].)

▆ The proof of intention to defraud "may consist of reasonable inferences drawn from affirmatively established facts." (*People* v. *Brown,* 137 Cal.App.2d 138, 143 [289 P.2d 880]; *People* v. *Horowitz,* 70 Cal.App.2d 675, 687 [161 P.2d 833]; *People* v. *Crowder, supra,* 126 Cal.App.2d 578, 585.)

▆▆ The rule with reference to the sufficiency of the evidence has been repeated many times and was succinctly set forth in *People* v. *Newland,* 15 Cal.2d 678, at page 681 [104 P.2d 778]:

". . . The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' . . ."

▆ Without repeating the evidence in this case, suffice it to say, from what has heretofore been set forth, that there was ample evidence to support the findings of the trial judge. It was very much as the appellant himself has indicated in his own testimony, namely, he did not tell the salesman the truth because had he done so the company would not have parted with the possession of the automobile.

With reference to counts III, IV and V the facts are as follows: The defendants drove, in the Oldsmobile car, to the

T. Philips Sign Company on Melrose Avenue in Los Angeles. The appellant said that Kemp went into the store to get a sign painted. A relative, appellant's brother-in-law, owned the place of business at that time. While in the place of business Kemp took from a box a number of blank checks with which we are now concerned.

Apparently the former owner of the business, T. Philips, died August 16, 1957, and his affairs, including the matters having to do with the business, were being handled by his daughter, the executrix of his estate. The daughter stated that the checks as made out and passed were not signed by T. Philips, and the form of the checks used in this case had not been used since the death of Mr. Philips.

Mr. Nadin stated that he purchased the sign company business from the estate of T. Philips, and that the checks used in this particular case were not signed by anyone authorized to do so by him, and that the signatures were not those of T. Philips.

Each of the checks in each of the counts with which we are concerned are substantially the same. The words and letters "T. Philips Signs" are printed at the top left corner of each check, and immediately thereunder are printed the address and telephone numbers as follows: "7819 Melrose Avenue WE 4-8722 WE 9-2947." The checks were numbered in printed figures at the upper right corners. At the lower left corner the name of the bank and address of same is set forth in printing, as follows:

"Melrose & Fairfax Branch
"Security-First National
  Bank of Los Angeles
"7900 Melrose Ave.
    Los Angeles, Calif."

The appellant told the officers after his arrest that apparently his codefendant took the checks from the sign company office. She, the appellant's codefendant, told the officers that "she and Leach had been out riding and drove out there to get a sign painted. That she had gone into this company and the checks were in a red cigar box up on a shelf and she had taken the' checks, taken them out to the car and taken them and written them."

Count III: In April, 1958, Kemp, appellant's codefendant, went into the Almquist Jewelry, Inc., shop on Crenshaw Boulevard and purchased a ring. In payment thereof she presented

one of the stolen checks made payable to "Warren James Leach" and signed by "T. Philips" as the maker. The check was dated March 4, 1958, and was in the amount of $65.48. On the reverse side of the check as received in evidence there appeared the writing "Warren James Leach. Mrs. W. L. Leach. OR 2-0113. 5044 W. Imperial Hwy. L A 54 Calif.," and the following notation, "Calif. Oper. Lic. W 585291 Husband." Kemp told the salesman in the jewelry store that she was Mrs. Leach. She was given a ring and $28.15 in change in exchange for the check.

Count IV: On a Saturday in March or April appellant drove Kemp to the Young Maternity Shop. While he waited in the car she went inside the store and purchased some clothes. In payment she gave the saleslady one of the stolen checks made payable to "Warren James Leach," and signed by "T. Philips" as maker. The check was dated March 4, 1958, and was in the amount of $62.19. On the reverse side of the check as it was introduced into evidence appeared the signature "Warren James Leach" and the following figures "W. 585291." Stamped endorsements of Young Maternity shops and the Bank of America appeared on the reverse side of the check. Kemp was given about $40 in change plus about $20 in merchandise in exchange for the check.

Count V: On Easter morning, April 6, 1958, Kemp presented a check to the Lu Arts Flower Shop on Western Avenue. Some flowers were given in exchange for the check. The check was one of the stolen checks made payable to "Warren James Leach" and signed by "T. Philips" as maker. The check was dated March 4, 1958, and was in the amount of $64.94. On the reverse side of the check appeared the signature "Warren James Leach" and also the endorsement of Joe Casprowick, the florist, and that of the Bank of America.

Neither of the defendants had authority to use the name "T. Philips" on the checks, and the signature on the checks was not that of T. Philips nor of anyone authorized to sign the name.

Appellant asserts that he had nothing whatsoever to do with the checks; that he did not know that Kemp had taken the checks at the sign company office; that he did not know that she was cashing the checks, and that all that he did was to drive her around while she shopped.

Section 470 of the Penal Code reads in part as follows:

"Every person who, with intent to defraud, signs the name of another person . . . knowing that he has no authority so to

do . . . to . . . any . . . check . . . or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above named false . . . matters . . . knowing the same to be false . . . with intent to prejudice, damage, or defraud any person . . . is guilty of forgery.''

Section 31 of the Penal Code provides:

''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed.''

Kemp was convicted of counts III, IV and V and no appeal was taken from that judgment. The question here is—was there sufficient evidence of the appellant's aiding and abetting Kemp in the commission of the crimes?

We have heretofore quoted from *People* v. *Newland, supra,* as to the rule by which we must be guided, that is, we cannot set aside the conviction unless it appears ''that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below,'' and that ''every fact which the jury could have reasonably deduced from the evidence'' will be assumed in favor of the verdict. It is true that the police stated that the appellant had said that he drove Kemp to the sign company's place of business and that the appellant had told the police that he had driven her ''around to do a lot of shopping,'' and that he ''didn't know that she was cashing checks.'' Further he told the police, '' 'We were driving one day and she went out there to get a sign painted. She went in and, apparently, took the checks.' He said, 'I didn't know she had taken them.' ''

When the defendant testified in his own behalf, at the time of the trial, he stated that he had not driven Kemp to the sign company—that he had driven her nearby and had let her out and that he had then gone to a gasoline station and gotten some gasoline for the car.

The prosecution asserts that deception and falsehoods as to the matters under investigation are evidence of consciousness of guilt, and such is a correct statement of the law. (*People* v. *Farrell,* 107 Cal.App.2d 25, 29 [236 P.2d 424]; *People* v. *Kristy,* 111 Cal.App.2d 695, 716 [245 P.2d 547].)

The fact that the appellant drove Kemp around to do some shopping, in and of itself is not sufficient to convict the appellant of participating in Kemp's forgeries, unless it can be established that appellant at least knew something of the forgeries and participated therein in some manner.

The prosecution also calls attention to the fact that Kemp used the appellant's driver's license as a means of identification in cashing the checks. Appellant, however, denied that he had any knowledge whatsoever of her using such license.

Kemp testified for the appellant at the time of the trial and the judge epitomized the whole matter when he said, "Why this fool girl wants to take the burden on herself is her affair, and not anything I can control." A police officer stated that he had talked to her and that she had told him that the appellant had not seen the checks, that the endorsements were hers and that she had cashed the checks. No one identified the appellant as being a participant in any of the dealings with Kemp.

We are convinced that under the circumstances the prosecution did not establish the essential elements of guilt as to counts III, IV and V as to the appellant.

Pursuant to the rules on appeal, we have had the original file and proceedings in this case brought to this court, and the probation officer's report therein as to Kemp discloses that she lived with the appellant for seven months in a common-law relationship and that they supported themselves mainly by writing bad checks. She stated that "Warren Leach did know about the checks I wrote. . . . He drove me to the places where the checks were cashed, and he knew I got the checks from his brother-in-law's shop and gave me his driver's license to cash them."

The probation officer's report with reference to the appellant discloses that although the appellant had falsified his parole reports as to his residence, and was living in a common-law relationship with Kemp, and engaging in writing forged checks for a livelihood from and after about 30 days following his release from prison to the date of his arrest in Texas, he was nevertheless not declared to be a parole violator and his term of parole expired without revocation on April 17, 1958.

The probation report also discloses that the appellant in the instant cases followed the same course in the case now before us as he had theretofore followed in the previous forgery cases for which he was sent to prison in 1953—namely, he had a young woman, supposedly his wife, steal business checks and then such checks were passed as being genuine while he was out on bail on the previous bigamy charge. The probation officer's report also indicates that there are many more forged checks outstanding, totaling about $900, which were passed in substantially the same fashion as the checks in

the instant case. It is apparent therefore that upon a retrial of counts III, IV and V, the prosecution will be in a position, if so minded, to establish, by the codefendant Kemp, the missing elements of the offense, if Kemp testifies as she set forth in her written statement to the probation officer.

The judgment and order denying a motion for a new trial are, and each is, affirmed as to count II.

The judgment and the order denying a motion for a new trial as to counts III, IV and V are, and each is, reversed.

The attempted appeal from the sentence is dismissed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 24, 1959, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1959.