[Crim. No. 6955.   Second Dist., Div. Three.   June 22, 1960.]

THE PEOPLE, Respondent, v. SHEILA SINSHIEMER, Appellant.

Sheila Sinshiemer, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FORD, J.—The appellant was accused of the crime of forgery (Pen. Code, § 470) in an information which contained four counts. She waived her right to trial by jury and was found guilty by the court with respect to the first, second and fourth counts and acquitted on the third count. Her motion for a new trial was denied and she was sentenced to imprisonment in the California Institution for Women for the term prescribed by law.

In the notice of appeal, the appellant states that she appeals "from the decision of the Court . . . and the judgment and sentence of the court rendered thereon . . . and from the denial of the defendant's motion for a new trial." █ No appeal lies from a "decision" of the superior court (*People* v. *Croxton,* 162 Cal.App.2d 187, 189 [327 P.2d 611]; see *People* v. *Hassen,* 144 Cal.App.2d 334, 345 [301 P.2d 80]) and, accordingly, the attempted appeal therefrom must be dismissed. The only question presented on this appeal as to each of the counts upon which the appellant was found guilty is the sufficiency of the evidence to sustain the conviction. It will therefore be necessary to give a summary of the evidence.

The first count involved a check which appeared to be a payroll check of the A-One Laundry in the amount of $72.90 payable to Flora S. Beck and bearing the date of February 27, 1959. The printed number on the check was "No. 1534."

George Mutschler testified that he was the manager of a business known as Jerry's Liquors and located at 9138 South Sepulveda Boulevard. About 9:30 o'clock one night shortly after the date of that check, the appellant came into his store alone, bought a small amount of liquor and asked the witness to cash the check. He did so. She endorsed the check in his presence.

The second count related to a check which also appeared to be a payroll check of the A-One Laundry in the amount of $72.90 payable to Flora S. Beck and bearing the date of February 27, 1959. The printed number on the check was "No. 1536." Ray J. Collins testified that the appellant presented the check to him at his store, Feely's Department Store, on a Sunday within a few days of its date. The appellant was alone and appeared to be "perfectly calm." She bought some merchandise. The appellant endorsed the name "Flora S. Beck" on the check in the presence of the witness. Mr. Collins' store was in the same area as that of Mr. Mutschler.

The testimony of Ben Comsky was that he was the operator of the A-One Laundry, that he did not recognize the signatures on the two checks described hereinabove, that only he and his wife were authorized to sign such checks, and that he had discovered that 24 checks were missing, being Numbers 1522 to 1546. Such discovery was made when his bank called him "six or seven weeks ago, maybe a few days longer."[1] He had no way of indicating the exact date when he received that information. He had no way of knowing how long prior to the time when the bank called that those checks had been taken. He had no employee by the name of Flora Beck. The appellant had never been employed by him.

The fourth count involved a check which appeared to be that of Artisan of California in the amount of $69.60[2] payable to Flora S. Beck and bearing the date of February 26, 1959. John Maglieri testified that he was a clerk in a liquor store on Sherman Way Drive. He had a transaction concerning that check with the appellant. She was alone. He remembered the transaction of cashing this check but did not remember "the defendant signing the check and endorsing it back." The appellant bought some groceries but no liquor. She was

---

[1] The testimony of the witness was that given on April 30, 1959, at the preliminary hearing and such evidence was received at the trial pursuant to stipulation. Such testimony is here quoted inasmuch as appellant bases her argument in part thereon as will hereafter appear.

[2] The numerals on the check appeared to be "67.60."

calm. William H. Lynch testified that he was in the business of manufacturing lamps and shades and that the check was one of his printed checks but that the signature thereon was not his. He gave no one permission to sign this check. Thirty-three checks had been torn out of his checkbook "about six weeks ago."[3] He further testified as follows: "Q. Six or seven weeks ago, can you remember the date with any precise accuracy? A. No. Q. Was it February? A. I will not say because I didn't know anything like that would come up. I could have looked in the checkbook or I could have brought over the book itself and showed it to you."

Officer Vincent Fallon testified that on March 25 he talked to the appellant. He showed her the checks involved in the four counts and asked her if she had passed them. She stated that she had. She further stated that she had not written on them and that they were pre-endorsed. She said that she had been made prisoner by two people who took her to various places and forced her to cash the checks.

The appellant testified in her own defense. She went to a house on Rodeo Road about February 25 pursuant to a telephone call relating to her foster sister, Jeannie. Her foster sister was not there. She was there held prisoner for about three days. At that house, the matter of cashing checks was discussed with her and eventually she did pass some checks. None of the writing on the checks in evidence was her writing. She had nothing to do with the Artisan of California check although she had seen it at the house. She believed she passed a check at Feely's Department Store. In response to a question as to whether she could have passed a check at a liquor store at 9138 South Sepulveda Boulevard (the address of Mr. Mutschler who testified as to count 1), the appellant answered, "If it is a delicatessen also, yes, sir." She knew that the checks were stolen. The reason that she passed these checks was as follows: "I was afraid for my physical safety, and I am not a very brave person physically. And I was also attempting, due to other situations which have been brought to my attention while I was at this residence, very desirous of getting in touch with the law enforcement agencies as soon as possible. I didn't feel getting injured would assist myself or them in any way." She testified as to threats: "Well, the exact threats were that I had seen Jeannie and I had seen the condition she was in, and that I would be put in a similar condition or

[3]This testimony was given at the preliminary hearing on April 30, 1959, and was received in evidence at the trial pursuant to stipulation.

worse if I didn't assist them in any way that I could to obtain this—the funds from these checks. I was—was pointed out to me that one of the men habitually carried a blackjack on his person at all times. And the threats were not simply insinuations; it was merely a matter of male force, and my knowledge that it had been used in the past and they would not hesitate to use it again.'' She passed about four or five checks. Within four hours after she was released, on March 3 she was taken by her parole officer to Corona. She had been convicted before for issuing checks without sufficient funds. The prior convictions were two in number.

Officer K. L. Woodward, a handwriting expert, was called as a witness by the appellant. He had not arrived at a definite opinion whether the appellant had written the signatures on the back of the checks. He stated: ''The best opinion would be that, assuming that the defendant did in fact write the handwriting exemplars which I have photostatic copies of in my hand, no identifying number thereon, could have placed the endorsements on the reverse side of People's 1, 2, 3 and 4.''[4] But the witness could not state ''unequivocally that this is either the signature . . . or not the signature of the defendant.'' There were ''more dissimilarities than similarities appearing in the endorsements on People's 1 through 4 than compared against the exemplar material.''

While we have stated and considered the evidence relating to the three counts (one, two and four) upon which the appellant was convicted, the bulk of her argument is addressed to the contention that the evidence shows that she was in custody at the time of the offense alleged in the fourth count. She points out that the witness Maglieri did not fix the date of the cashing of the check and that the witness Lynch testified that the blank check was stolen from him about six weeks before April 30, 1959. Since she was taken into custody by her parole officer on March 3, she argues that the check must have been stolen and thereafter cashed while she was in custody. What the appellant has overlooked in her own testimony that ''this one of Artisan of California, I did not pass that check or have anything to do with it *other than having seen it at the house at that time.*'' (Emphasis added.) Moreover, it is clear from the excerpt from Mr. Lynch's testimony

---

[4]People's Exhibits 1, 2, 3 and 4 were the checks respectively involved in counts 1, 2, 3 and 4 in this case. It was stipulated that the appellant did write the handwriting exemplars of which the witness had photostatic copies before him.

which has been set forth above that Mr. Lynch was unable to fix the exact date of the theft of checks from him. He was not aware of the theft until he heard from his bank. It is a reasonable inference that such theft of the checks occurred at a time substantially earlier than six weeks prior to his testimony of April 30. Furthermore, the appellant overlooks the fact that Mr. Maglieri identified her as the person who requested him to cash the check. Officer Fallon testified that she admitted that she cashed the particular check. ■ It was the province of the trial court to pass upon the credibility of the witnesses and to determine the weight to be given to their testimony. In so doing, it was for that court as the trier of fact to resolve any conflicts or inconsistencies in the evidence. (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42].) There was substantial support in the record for the conclusion that the appellant was the person who cashed the check involved in the fourth count as well as those involved in the first and second counts. ■ As stated in *People* v. *Murrie,* 168 Cal.App.2d 770, at page 773 [336 P.2d 559] : ''It should be borne in mind in passing on the sufficiency of the evidence to sustain a conviction, that before a reversal may be had, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ We must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts 'justify the inference of guilt.' (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) ■ If the circumstances reasonably justify the determination of the trier of fact, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant a reversal. (*People* v. *Newland, supra.*)'' (See also *People* v. *Brown,* 137 Cal.App.2d 138, 141 [289 P.2d 880] ; *People* v. *Leach,* 168 Cal.App.2d 463, 467 [336 P.2d 573].)

While what has been said disposes of the argument made by the appellant in her brief, a review of the record has convinced us that, with respect to each count as to which she was found guilty, the evidence received thereunder clearly sustained a finding of the existence of the necessary elements of the offense charged. ■ Such requisites are stated in *People* v. *Chapman,* 156 Cal.App.2d 151, at page 156 [319 P.2d 8] : '' 'The crime of forgery consists either in the false

making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud.' (*People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065]; Pen. Code, § 470.) ▮ 'To constitute forgery by uttering or passing a forged instrument as defined in section 470 of the Penal Code, three important factors are requisite: 1. It must be uttered, published, passed, or attempted to be passed, as true and genuine; 2. It must be known by the person uttering or passing it to be false, altered, forged, or counterfeited; 3. It must be with intent to prejudice, damage, or defraud some person.' (*People* v. *Smith*, 103 Cal. 563, 565 [37 P. 516].)'' ▮ ''The proof of intention to defraud 'may consist of reasonable inferences drawn from affirmatively established facts.' (*People* v. *Brown*, 137 Cal.App.2d 138, 143 [289 P.2d 880]; *People* v. *Horowitz*, 70 Cal.App.2d 675, 687 [161 P.2d 833]; *People* v. *Crowder, supra,* 126 Cal.App.2d 578, 585 [272 P.2d 775].)'' (*People* v. *Leach, supra,* 168 Cal. App.2d 463, 467.)

▮ While the appellant testified that her acts were not done of her own free will but were the result of the threats of persons who had imprisoned her, the record establishes that the trial court, in the exercise of its function of weighing the evidence, was amply justified in rejecting such defense. (*People* v. *Villegas*, 29 Cal.App.2d 658, 661 [85 P.2d 480]; *People* v. *Sierra*, 115 Cal.App.2d 498, 500 [252 P.2d 394].)

The attempted appeal from the decision is dismissed. The judgment and the order denying the motion for a new trial are affirmed.[5]

Shinn, P. J., and Vallée, J., concurred.

---

[5]The judgment in a criminal action is the sentence and affirmance of the judgment carries with it affirmance of the sentence. (*People* v. *Tokich*, 128 Cal.App.2d 515, 519 [275 P.2d 816]; *People* v. *Perkins*, 147 Cal.App.2d 793, 797-798 [305 P.2d 932]; *People* v. *Carlson*, 177 Cal.App.2d 201, 207 [2 Cal.Rptr. 117].)