[Crim. No. 1787.   Fourth Dist.   June 18, 1963.]

THE   PEOPLE,   Plaintiff   and   Respondent,   v.   JOHN WALTER  BARTSCH,  Defendant  and  Appellant.

Lippold, Cross, McCartin & Hall, Donald A. McCartin and Christopher Hall for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged with violation of Penal Code, section 475a (possession of a forged check with intent to defraud), i.e., he had in his possession a completed check of Arthur W. Gilmore, dated August 17, 1962, in the sum of $150, with intent to utter and pass the same, and with intent to defraud another person.

He pleaded not guilty, waived a jury trial and was found guilty by the court. Conditional probation was granted for two years and he appealed from the order.

## FACTS

On July 29, 1962, Arthur W. Gilmore lost a wallet in the Lido Theater in Newport Beach. It contained, among other things, three blank checks of Gilmore on the Security First National Bank of Beverly Hills. The next morning, Gilmore went to the theater and the manager and a cleanup man (later identified as the defendant) indicated that the wallet had not been found. On August 21, 1962, an officer stopped a Chevrolet car which was speeding on Harbor Boulevard in Garden Grove. The officer noticed a fire hydrant, a real estate sign and a child's wagon in the vehicle. He questioned the passenger in the car and the passenger (defendant) showed him a California driver's license and said that his name was "Bill Clarke Bailey." The officer noticed the description on the driver's license did not fit defendant. Defendant then produced a draft card with the same name. Defendant and the driver of the car were arrested for taking the hydrant and the other articles and defendant pleaded guilty to malicious mischief. At the jail, the officer found defendant's operator's license in his wallet which identified him as John Bartsch, and also found a check in his wallet made out to Bill Bailey and signed "Arthur Gilmore," in the sum of $150. On interrogation, defendant said that he was Bailey and that Bartsch was his cousin, but later he admitted that he was Bartsch. He said Bailey was his cousin and that he (Bailey) had left the identification in the wallet after borrowing it. Later, defendant said that he had obtained it from Bailey at a party, and still later he said that he went to school with Bailey and got it from him. On further interrogation, de-

fendant told the officer that Mr. Gilmore was his employer and had given him the check for some work he had done. He later said that he found the billfold on the street, and finally he admitted finding it in the Lido Theater one morning while cleaning up. He said that he had made out one of the checks to Bill Bailey and signed it Arthur W. Gilmore and had carried it with him for two or three days, and that he intended to cash it at a later date and to use Bailey's identification card. A credit card was found in the wallet and the remaining property of Gilmore was found in defendant's apartment, including two blank checks, as described. Defendant said that he and his roommate intended to move out of the apartment where they were living and move to a nicer one, and that they were going to pay $232 per month rent.

At the trial, Arthur Gilmore testified that the signature on the check in evidence was not his, and that he had not given anyone permission to sign his name to the check.

Defendant testified that he found Gilmore's wallet in the theater; that he told Gilmore that he had not found it; that he took one of the blank checks and wrote it out, as indicated, and was using Gilmore's wallet after removing other articles excepting the driver's license and selective service registration card of Bill Bailey; and that he left the other articles in his apartment. He admitted that the stories he had told the officer were untrue, but denied telling the officer that he had any intention of cashing the check at any time. He testified that he did not know what his intentions were, nor could he explain why he did it.

As we understand it, the only question on appeal is defendant's contention that he did not violate Penal Code, section 475a because: (a) section 475a contemplates a genuine check and appellant possessed a forged check; (b) section 475a contemplates a ''completed'' check and appellant possessed an incompleted check; and (c) section 475a contemplates a specific intent and appellant did not have such an intent. He contends that Penal Code, sections 470, 476 and 476a, are sufficient in themselves and that section 475a adds nothing to the statutory scheme; that if any crime was committed it was not the crime charged. (Citing *People* v. *Elliott,* 90 Cal. 586, 587 [27 P. 433]; *People* v. *Bendit,* 111 Cal. 274, 277 [43 P. 901, 52 Am.St.Rep. 186, 31 L.R.A. 831]; *People* v. *Thornburgh,* 4 Cal.App. 38 [87 P. 234].)

Penal Code, section 475a (enacted in 1961) provides:

''Every person who has in his possession a completed check,

money order, or traveler's check, whether the parties thereto are real or fictitious, with intention to utter or pass the same, or to permit, cause, or procure the same to be uttered or passed, to defraud any person, is punishable by imprisonment in the state prison for not less than one nor more than 14 years.''

We see no merit to the contention that section 475a requires that the check be genuine. The section applies to a ''completed check'' in possession ''whether the parties thereto are real or fictitious.''

Some claim is made that Civil Code, sections 3265a and 3207, defining a bill of exchange, already bring a check within the provisions of section 475a of the Penal Code.

In 36 Journal of the State Bar of California, page 798, commenting on the purpose of the enactment of Penal Code, section 475a, it recites:

''As amended and clarified section 475 makes possession of a blank or unfinished check, money order, or traveler's check with intention to complete such or cause it to be filled out or uttered or passed to defraud any person punishable by imprisonment in the state prison for not less than one nor more than 14 years. The parties to such check, money order, or traveler's check may be real or fictitious.

''Section 475a to the same effect refers to *completed* checks.''

Section 475a as clarified is here applicable. The question then is whether the check in evidence was *completed* within the meaning of that section. The check was filled in on its face. Defendant argues that it was not completed because it was not endorsed by Bill Bailey. The additional act of forging Bill Bailey's signature as an endorsement by defendant was not necessary to complete the forged instrument. Defendant was passing himself off as Bill Bailey for this purpose and when arrested he said that he was Bill Bailey, and it does appear that defendant would not have hesitated to identify himself as Bailey if he had gone to cash the check. Apparently, counsel for defendant recognized it as a completed check in examining defendant on the witness stand, as follows:

''Q. Did you have anything else of Mr. Gilmore's except this one credit card and the *completed* check made out to Bill Bailey for $150? . . .

''A. No.

''.      .      .      .      .      .      .      .      .      .      .

''Q. Now, this *completed* check made out to Bill Bailey, was

that check with the rest of the I.D. and so forth up until the day you had *completed* and wrote it out?

"A. Yes.

"..........................

"Q. Now, at the time you wrote out this check, did you write it out *completely* and sign it all at one time?

"A. Yes.

"Q. Then as soon as you *completed* the check, what did you do with it, if you recall?

"A. It was —— I just remember leaving it on the table." (Italics ours.)

The evidence was sufficient to show a completed check within the meaning of Penal Code, section 475a.

■ The next question is whether the evidence showed the requisite intent under that section. The circumstances of failure to report to the owner of the finding of the wallet, the continued possession of it and the blank checks and identification card of Bailey, the forging of Gilmore's name and making the check payable to Bailey, who defendant represented himself to be, and defendant's statement to the police that he intended to cash it later, showed sufficient facts from which the jury could draw the conclusion that defendant intended the acts charged. (*People* v. *Sinshiemer,* 182 Cal.App.2d 103, 109 [5 Cal.Rptr. 740].)

Judgment affirmed.

Brown (Gerald), J., and Conley, J.,* concurred.

———
*Assigned by Chairman of Judicial Council.