[Crim. No. 74. Fifth Dist. Aug. 19, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD DUBOIS POLAND, Defendant and Appellant.

John D. Chinello, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant

Attorney General, and John L. Giordano, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (R.M.), J.—The appellant was charged with the violation of Penal Code section 470, in that he wilfully and unlawfully, with intent to defraud, passed a forged instrument payable to James Cox for $110.20 purportedly signed by the Best Concrete Products, Inc. by Paul Boss. He entered a plea of not guilty and at the commencement of the trial admitted two former convictions (for attempted robbery and violation of Health & Saf. Code, § 11500). He appeals from the judgment upon a jury verdict of guilty.

On September 16, 1962, at 1 a.m. Mrs. Ruby Harrell drove the appellant, Mrs. Burnett and three other people to a liquor store in Fresno. With Mrs. Burnett, the appellant entered the store and inquired of Mr. Steele, the owner, if he would cash a $110.20 check for him. (This check, numbered 3051, was one of a group of pre-printed checks stolen from the Best Concrete Products, Inc. of Oakland in May 1962.) This check was made payable to James Cox, and being advised by Mr. Steele that he did not have that much money but could give him $20, the appellant said, "That's all right, I'll take some whiskey and stuff included." The appellant then endorsed the check, signing the name "James Cox" on the back of it, showed a driver's license for identification, received $20 in cash and approximately $15 worth of merchandise. Mr. Steele gave the appellant an I.O.U. on a torn-off piece of wrapping paper for the balance owed, in the sum of $75.25, told the appellant he would have the balance by 10 a.m., to which appellant said, "All right, I will be back after it."

At approximately 10 a.m. of the same day the appellant returned to the store and attempted to redeem the I.O.U. Meanwhile, officers were in the back room of the liquor store and when appellant returned, Mr. Steele identified the appellant, saying, "Oh, this is him."

A search of the appellant for weapons revealed an "open" envelope containing four checks from the Best Concrete Products, Inc., which included the numbers of the stolen checks, and a California driver's license made out to James Fonzo Cox, and an identification card.

It was appellant's defense that the I.O.U. was given to him by "Willie" for a gambling debt and that in a "sealed" envelope which enclosed the blank checks he thought there was a note to be used to explain any problems he might encounter

in trying to cash the I.O.U.; that the driver's license and other identification of James Cox were also given to him by "Willie"; that he had not traveled any place in a car with Mrs. Burnett but had bought her a beer; that he delivered the I.O.U. to Mr. Steele and was arrested immediately thereafter.

■ "The rule is that in reviewing the evidence, all conflicts are resolved in favor of the judgment. Whether the judgment will stand is to be determined only by whether any substantial evidence is found or whether inferences can be fairly drawn that will support the implied findings." (*Casper v. City of Los Angeles,* 140 Cal.App.2d 433, 437 [295 P.2d 452].)

Appellant urges reversal, contending (1) that there was prejudicial error committed by the prosecuting attorney in bringing before the jury an offer to compromise made by the appellant prior to trial; (2) that it was error to admit handwriting exemplars and that the alleged endorsement of the forged check went to an element of an offense not charged; and (3) that there was insufficient evidence to sustain the verdict.

■ The prosecuting attorney, on cross-examination of the appellant, asked if, when the attorney had visited him in the County Jail on a certain date, "You remember at that time telling me you would be willing to take County time——" Thereupon, the attorney for appellant immediately objected to the question as being irrelevant and highly prejudicial, to which the court, after a conference with counsel in chambers, sustained the objection and admonished the jury that though there was no question of the good faith of the prosecuting attorney, no weight whatsoever should be given to any construction placed upon the language used by the prosecuting attorney, that the remarks be stricken from the record, that the jury disregard them, that it would be a violation of the juror's oath if any consideration was given to the remarks of the prosecuting attorney.

The applicable law is stated as follows by the court in *People v. Kristy,* 111 Cal.App.2d 695, 714 [245 P.2d 547]: "We are satisfied that the acts of the district attorney, although misconduct, did not prevent appellant from having a fair trial or result in a miscarriage of justice. In view of the court's prompt rulings and instructions to disregard the questions when requested by appellant, which it will be pre-

sumed were heeded by the jury, it cannot be said under the facts of the instant case, that the cause of the accused suffered by reason of anything contained in the challenged questions however improper they may have been [citations]."

The prompt admonition of the court is approved in *People* v. *Saugstad,* 203 Cal.App.2d 536, at page 546 [21 Cal.Rptr. 740], where it was stated, "We must assume that the prompt admonition of the court cured any possible prejudice [citation], and that no prejudice occurred by the asking of questions to which objections were sustained."

It is clear that the appellant was not prejudiced by the alleged misconduct of the prosecuting attorney. In this matter there is overwhelming evidence that the appellant was properly found guilty by the jury and in comparable situations such as this where the error committed is of minor import, such an error, even though not corrected, does not result in a miscarriage of justice as far as the determination of guilt is concerned. (*People* v. *Hamilton,* 60 Cal.2d 105, 121 [32 Cal. Rptr. 4, 383 P.2d 412].)

In *People* v. *Wilson,* 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], Penal Code section 1192.4 is discussed as to offers to plead guilty, and states that it was improper for the prosecutor to comment on such an offer before the jury and that such conduct should not recur in the future, but the court was of the opinion that there was no miscarriage of justice inasmuch as "the offer was but a small item in the mass of credible, incriminating evidence introduced by the prosecution. . . ." Therefore, we conclude that there was no prejudicial error involved in the prosecuting attorney's question.

Appellant's next objection refers to handwriting evidence which went to the element of the offense of false making, or alteration of a document, and apparently refers to the testimony of the document examiner of the sheriff's office. No objection was made to the introduction of this evidence, though there was a lengthy cross-examination made by the appellant. ■ As said in *People* v. *Jones,* 52 Cal.2d 636, 646 [343 P.2d 577], where there is no objection made at the trial, such failure to object precludes objection on appeal to admission of such evidence.

■ Appellant's objection to the testimony of Mr. Steele as to the endorsement of "James Cox" on the back of the check in front of Mr. Steele was properly overruled, as this referred to the issue of knowledge and uttering a forged check, and was proper. ■ We think this is satisfactorily covered in

*People* v. *Peete,* 28 Cal.2d 306, at pages 314-315 [169 P.2d 924], where the court said:

"It is settled in this state, however, that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. ▮ 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.] 'It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.' [Citations.]"

▮ " 'Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice, or a common plan or scheme. . . .' " (*People* v. *Carvalho,* 112 Cal.App.2d 482, 492 [246 P.2d 950].)

Regardless of the testimony of Captain Riddle, the handwriting expert from the sheriff's office, such testimony is, at the most, cumulative, inasmuch as Mr. Steele saw the appellant sign the endorsement on the check.

The last contention of the appellant is as to the sufficiency of the evidence. ▮ The test applied is set forth in *People* v. *Sinshicmer,* 182 Cal.App.2d 103, 108 [5 Cal.Rptr. 740], where the court said: "If the circumstances reasonably justify the determination of the trier of fact, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant a reversal."

. In *People* v. *Luizzi,* 187 Cal.App.2d 639, 644 [9 Cal.Rptr. 842], the court discusses two ways in which such matters may be treated, as follows: "The crime of forgery as de-

nounced by statute (Pen. Code, § 470) consists of either of two distinct acts—the fraudulent making of an instrument, such as a false writing thereof, or the uttering of a spurious instrument by passing the same as genuine with knowledge of its falsity [citation]; and although both acts may be alleged in the conjunctive in the same count in the language of the statute, the offense does not require the commission of both—it is complete when one either falsely makes a document without authority or passes such a document with intent to defraud [citations], and the performance of one or both of these acts with reference to the same instrument constitutes but a single offense of forgery.''

The elements of forgery by uttering are spelled out in *People* v. *Hellman,* 189 Cal.App.2d 777, 778-779 [11 Cal. Rptr. 433], as follows: '' ' ''To constitute forgery by uttering or passing a forged instrument as defined in section 470 of the Penal Code, three important factors are requisite: 1. It must be uttered, published, passed, or attempted to be passed, as true and genuine; 2. It must be known by the person uttering or passing it to be false, altered, forged, or counterfeited; 3. It must be with intent to prejudice, damage, or defraud some person.'' ' (*People* v. *Pounds,* 168 Cal.App.2d 756, 758 [336 P.2d 219]; Pen. Code, § 470.)''

It is clear in this matter that the check was not genuine, but the forgery was established by the testimony of Mr. Best, of Best Concrete Products, Inc., as to the authorized persons to sign the company's checks, that the name ''Paul Boss'' was not an authorized signature for his checks, nor was anyone else authorized to sign his name; that the check was uttered by the appellant is clearly established by the testimony of the store owner to whom the appellant presented the check, received the cash, merchandise, and the I.O.U. for the difference. The appellant also uttered the check, knowing it to be false. ''Mere possession of a forged instrument is a circumstance affording some evidence of knowledge of its spurious nature'' (*People* v. *Rosborough,* 178 Cal.App.2d 156, 163 [2 Cal.Rtpr. 669]), and this knowledge may be inferred from the various circumstances surrounding the entire transaction.

While the appellant claims that he received this I.O.U. from ''Willie'' who gave him the envelope and the driver's license, there is more than adequate testimony that the appellant gave the involved check directly to Mr. Steele, the store owner, and that the appellant endorsed the name ''James

Cox" on the check in front of Mr. Steele, that he had, on his arrest, other company checks made out in identical amounts of $110.20, that Mrs. Burnett and Mrs. Harrell both testified that the appellant was driven to the store by Mrs. Harrell, that Mrs. Burnett who testified that she saw the appellant sign and cash the check, corroborates the store owner's testimony as to these facts. This review more than substantiates the conclusion that appellant knew that these checks were forged documents.

The last element established was the proof of the criminal intent of appellant. "Proof of intent to defraud may consist of reasonable inferences drawn from affirmatively established facts" (*People* v. *Moore,* 164 Cal.App.2d 695, 697 [331 P.2d 226]; *People* v. *Brown,* 137 Cal.App.2d 138, 143 [289 P.2d 880]; *People* v. *Crowder,* 126 Cal.App.2d 578, 585 [272 P.2d 775]; *People* v. *Leach,* 168 Cal.App.2d 463, 467 [336 P.2d 573]). Also, the appellant had intent and knowledge, as discussed in *People* v. *Davis,* 176 Cal.App.2d 80, 84 [1 Cal.Rptr. 103].

In *People* v. *Williams,* 186 Cal.App.2d 420, 424 [8 Cal. Rptr. 871], the court said: "The fact that defendant attempted to pass the check with intent to defraud is fairly deducible from the evidence. On the question of intent to defraud, the observations of this court in a strikingly similar situation are here apposite: 'It is established law that where the forgery consists in the false making of an instrument, the fact of forgery may imply an intention to defraud. [Citations.] There is no logical reason why the same rule should not apply with equal force where a person passes a check as genuine knowing at the time that it is forged. This was impliedly held in *People* v. *Weiskopf,* 60 Cal.App.2d 214, 217-218 [140 P.2d 201]. Furthermore, there is a presumption that an unlawful act was done with an unlawful intent and that a person intends the ordinary consequences of his voluntary act. . . .' (*People* v. *Chapman,* 156 Cal.App.2d 151, 158 [319 P.2d 8].)"

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.